HENRY STUCKE, Appellant, *vs.* THE MILWAUKEE AND MISSISSIPPI RAILROAD COMPANY.

APPEAL FROM CIRCUIT COURT, CRAWFORD COUNTY.

Heard July 21.]                         [Decided August 5, 1859.

*Instructions—Trespass—Damages—Negligence—Railroads.*

On the trial of an action against a railroad company for negligently and carelessly running their cars over, and killing the cattle of the plaintiff, the circuit judge read the entire syllabus of the case of *Clark vs. The Syracuse and Utica Railroad Co.*, 11th Barb. Sup. Ct. Rep., 112, and instructed the jury that that syllabus was the law of this case: *held,* that because the facts in the cases were very dissimilar, such instruction was calculated to mislead the jury, and the instruction was erroneous.

Where it does not appear that the plaintiff was in the habit of suffering his cattle to run on the railroad track, or that he was in a situation to take any steps to avert the danger they might receive from the passing locomotives and cars of the company; the presence of the cattle at the time on the track will be considered as accidental, and at most they will be deemed but trespassers, and be presumed to have escaped from the inclosure of the plaintiff, through the insufficiency of fences, and liable for damages which they might commit; but if the servants of the company used no means to avoid killing the cattle, if they showed such an inattention and disregard of consequences, such a degree of rashness or wantonness on their part as evinces a total want of care for the safety of the cattle, or a willingness to destroy them, though the destruction itself may have been unintentional, then,

upon justice and principle, the company will be held responsible for their loss, unless it also appear that the owner was equally negligent.

The liabilities of railroad companies for negligence in the absence of any statute to the contrary, are to be determined upon the same principles as the liabilities of private persons.

In the absence of any statute requiring it, it is generally well settled, that railroad companies are not obliged to fence between themselves and adjoining landholders.

It would seem that if the owner of cattle permitted them to be at large upon, or in the vicinity of the Mil. & M. R. R. track, which is not fenced, or be in places where they might stroll upon the track of the road, or if he were present at the time of the injury by the the passing train, &c., and made no effort to remove them, he would be guilty of gross and culpable negligence; but if he had provided against their escaping upon the road, and they accidentally did so, although they would be technically trespassers, yet the company will be liable for damages if they are wantonly and unnecessarily destroyed. The care required by the law is to be exercised by the man, not by the brute.

The obligation of diligence is relative, and its presence or absence in one party is required or excused in proportion as it is absent or present in the other.

It would seem that when there has been mutual negligence on the part of the plaintiff and defendant, and the negligence of each was the proximate cause of the injury, no action can be sustained.

So where the negligence of the plaintiff is proximate, and that of the defendant remote, or consisting in some other matter than what occurred at the time of the injury, no action can be sustained.

But where the negligence of the defendant is proximate, and that of the plaintiff remote, the action for the injury can well be sustained, though the plaintiff were not entirely without fault; so that if there were negligence in the plaintiff, yet if, at the time when the injury was committed, it might have been avoided by the defendant by the exercise of reasonable care and prudence, an action will lie for the injury.

In an action against a railroad company for trespass in negligently killing cattle the circuit judge charged the jury that the following, which he read from the case of *Clark vs. The Syracuse & Utica Railroad Co.*, 11 Barb. Sup. Ct. Rep., 112, was the law of the case before them, viz : "Although a person has a right to use the highway for the passage of cows to and from the pasture, yet he must use ordinary and proper care and diligence in driving them, having reference to the situation of the road, and the manner in which it is used. Where cows are trespassers upon a railroad, their owners cannot maintain an action against the railroad company for running over and killing them by the passenger cars, even if the death of the cows were occa-

Stucke vs. Mil. & Mis. R. R. Co.

sioned by the *gross* negligence of the defendants. Accordingly, where it appeared that cows were pasturing in a lot adjoining a railroad, between which and the railroad there was no fence, and there was no allegation in the pleadings to authorize evidence that they escaped on the road through a defect of fences, which the defendants were bound to make at that point, or showing from what place, or in what manner, or how the cattle came upon the road; held that no action could be maintained against the railroad company for running over and killing the cows by means of their engines and cars." This court holds on this appeal that such instruction was erroneous, because it precluded a recovery under any circumstances, for a negligent destruction of the plaintiff's cattle by the defendant.

Where an instruction is partly correct, and partly incorrect, the court is not required to give what is correct, and refuse the balance, but may refuse to give it entirely.

The facts in this case are fully stated in the opinion of the court.

*W. Knowlton & Thomas,* for the appellants.

*D. H. Johnson,* for the respondent.

*By the Court,* DIXON, C. J. The complaint in this case, which was originally commenced before a justice of the peace of Crawford county, is in the usual form of declarations in actions upon the case for negligence, and alleges, substantially, that the defendants, by their agents and servants, with their engines and train of cars, propelled by steam, while running over their railroad track, did, on the 1st day of August, 1857, negligently and carelessly run over and kill a cow of the plaintiff; and also, on the 15th day of May, 1858, an ox; both alleged to be of the value of one hundred dollars. The defendants answered denying each and every allegation of the complaint, and gave notice that they would prove a former judgment for the same causes of action, &c. It is admitted that this notice was given through a mistake of facts, and was not relied upon by the defendants. Hence, no further notice need be taken of it here.

Upon the trial in the circuit court it was proved that on the

first day of August, 1857, the cow in question, with four oi five other cattle, was seen on the railroad track of the defendants about one-half mile west of the plaintiff's house, in the town of Prairie du Chien, and that, at the same time, the locomotive and train of cars of the defendants were seen upon the track about three-fourths of a mile east of the place where the cows and other cattle were; that the train was going west, and at much greater speed than usual; that between the places where the cars and cattle were first seen, the track was straight or nearly so, and that the cattle could be plainly seen the whole distance; that the locomotive and cars ran against the cow and killed her; that the speed of the cars was not lessened as they approached the cattle; that the whistle was not blown, nor was any other signal made or given to frighten the cattle from the track; and that the occurrence took place between eight and nine o'clock in the morning.

In regard to the killing of the ox, the plaintiff's witness testified, that on the 15th of May, at about nine o'clock in the morning, he saw the defendants' train of cars pass, going west, and a short time after he saw it stop, and on going to the spot where it had stopped, found that the ox mentioned in the complaint had been killed by the train; that from the place where the ox was killed, to the place where he saw the cars, was about one mile; that the ox was killed in the plaintiff's meadow; that from the place where the ox was killed, looking east, a person could see along the railroad track two miles—the road for that distance being straight, or nearly so; that from the place where he first saw the cars, the ox could be seen, there being no obstruction to the view when standing on the track; and that there was no whistling of the locomotive, or other signal given, until the train stopped at the place where the ox was killed. It further appeared, by the plaintiff's showing, that that portion of the road upon which

the injuries occured, was located through the plaintiff's lands, which were used by him as a meadow, and that there was no fence upon either side.

The defendants, on their part, introduced two witnesses, neither of whom were present at the time the cattle were killed. Their testimony, when taken in connection with the rebutting proof offered by the plaintiff, did not, in any material point, vary the facts and circumstances as to the killing as above stated. One of them, a freight agent on the defendants' road, testified that it would not, in general, be safe to attempt to stop a train, when in full motion, short of the distance of one-fourth of a mile. The other, a conductor on the road, testified that a train of cars, going at ordinary speed, could not safely be stopped short of from sixty to one hundred rods.

Upon this state of facts the circuit judge, at the request of the defendants, instructed the jury, "that the case of *Clark vs. The Syracuse & Utica Railroad Company*, reported in the Eleventh Volume of Barbour's Reports, on page 112, is a case nearly like the case now at bar, in which it was decided that " an action for negligence could not be sustained if the wrongful act of the plaintiff co-operate with the misconduct of the defendant to produce the damages sustained, and this is so whether the plaintiff's act was negligent or *wilful*. It is an act of negligence to suffer cattle to be at large in the highway at railroad crossings. Therefore, when the owner of a cow suffered her to be, at large in the highway, and upon a railroad track, at the usual time for the passenger train of cars to pass, and the cow was killed by the train of cars: *Held*, that the owner could not recover in an action against the railroad company. Although a person has a right to use the highway for the passage of the cows to and from the pasture, yet he must use ordinary and proper care and diligence in driving them, having reference to the situation of the road,

and the manner in which it is used. Where cows are trespassers upon a railroad, their owners cannot maintain an action against the railroad company for running over and killing them by the passenger cars, even if the death of the cows were occasioned by the *gross* negligence of the defendants. Accordingly, where it appeared that cows were pasturing in a lot adjoining a railroad, between which and the railroad, there was no fence, and there was no allegation in the pleadings to authorize evidence that they escaped on to the road through a defect of fences, which the defendants were bound to repair, and no averment that the defendants were bound to fence at that point, or showing from what place, or in what manner, or how the cattle came upon the road: *Held*, that no action could be maintained against the railroad company for running over and killing the cows by means of their engines and cars."

This charge which is a *verbatim* copy of the syllabus of the case referred to, was we understand, read from the report by the judge to the jury and given to them as the law governing the case, to which the plaintiff excepted.

The counsel for the plaintiff requested the circuit judge to give the jury the following instructions, viz :

" 1. If you are satisfied from the evidence that the cattle of the plaintiff mentioned in the complaint were killed by the wilful, careless, or negligent act of the agents or employees of the defendants, in running their locomotives and cars, or either, on the railroad of the defendants, in this county, your verdict will be for the plaintiff to the extent of the value of the property as proved to you.

" 2. If you are satisfied from the evidence that the cattle of the plaintiff mentioned in the complaint were killed on the railway track or bed of the defendants, in consequence of the defendants operating their road with locomotives and cars, or either of them, in this county, and where the defend-

ants had no fence on either side of such railway track or bed, your verdict must be for the plaintiff to the extent of the value of the cattle thus killed as shown by the testimony."

Both these instructions were refused by the court, to which refusal the plaintiff excepted.

The manner in which the charge in this case was given is certainly very strange and anomalous. Although such a mode might not of itself be erroneous; yet when adopted without reference to the facts in proof before the jury, it will be very likely, as in the present case, to lead to errors. It does not appear whether the facts in the case of *Clark vs. The Syracuse & Utica Railroad Company* were stated and explained to the jury or not, or whether or not the jury were permitted to take the report with them to their consultation room, there to read and learn for themselves. Certain it is, that if either of these things had been done, the jury could not have avoided perceiving that there were no points of resemblance in the two cases, except the single one, that in both instances cattle were killed by a passing train of cars. The statement of the judge that that case was nearly like the one at bar was certainly calculated to mislead them.

In that case it had been the practice of the plaintiff to suffer his cattle to run at large upon the track of the railroad. The defendants had remonstrated with him for so doing, and requested him to keep them off, which he neglected to do. The train was the regular passenger train and came along at the usual hour. He saw the cattle on the track a half or quarter of an hour before the cars came along, heard the train coming a mile and a half or more away, and knew that his cattle were there at the time of the accident. The engineer saw the cows when he was 50 or 60 rods off as he came around a curve. He gave the signal to break; reversed his engine and did all he could to stop, and so far succeeded that he ran only two or three rods after the engine struck the cows.

Stucke vs. Mil. & Miss. R. R. Co.

It will be seen that two cases more dissimilar could not well be imagined. In that case the plaintiff, against the expostulations of the defendants, had been and then was pursuing a course of censurable and wanton neglect. *He was present at before and the happening of the accident.* He knew the cars were coming, was well aware of the danger to which his cattle were exposed, and by the exercise of ordinary care and prudence *at the time,* might have prevented their destruction. On the part of the defendants every effort was made at the earliest possible moment to prevent the collision. The breaks were put down and the engine reversed, but the collision was unavoidable. In the present case it does not appear that the plaintiff was in the habit of suffering his cattle to run upon the defendants' road; that he was present at the time the accident happened, or knew that his cattle were upon the track; or that he was in a situation to take any steps, or use any precautions to avert the injury. There is nothing to show any moral delinquency on his part. So far as he was concerned, the presence of his cattle at the times and places of the injuries may have been entirely involuntary or accidental. In view of the facts established, the most that can be said upon this subject is that, in law, the cattle were trespassers upon the defendants' road, presumed to have escaped through the insufficiency of the plaintiff's fences, which, for the purpose of rendering him responsible for any damage done by them while at large, is the same as if he had permitted them to go without any restraint whatever. Fitzherbert Abr. N. B., 298, note; *Rust vs. Law,* 6 Mass., 99; *Jackson vs. Rutland & Burlington Railroad Co.,* 25. Vermont, 161,

On the part of the defendants no measures whatever were resorted to to avoid killing the cattle. The whistle of the locomotive was not sounded, no signal was given; and although, according to the testimony of the defendants' wit-

ness, in one instance three and the other four times the distance required for stopping the trains, with convenience and safety, intervened between the points where the engineers must have seen the cattle and those where the injuries took place, yet the speed of the train was not in the least slackened or checked. These facts show a most reckless inattention and utter disregard of consequences on the part of the engineers and those in charge of the trains.

Inasmuch as the judge in his instructions to the jury gave them indiscriminately all the propositions of law laid down in Clark's case, the discussion of the law in this case can be but little more than a review of the principles there asserted. The first three propositions may be regarded as generally correct, but the two last, when applied to the facts of this case, we do not think are so. That portion of the first proposition in which it is stated that a plaintiff cannot recover, when the damages are the consequence of his own wilful act, is an assertion from the bench of a trueism which is little short of ridiculous. The maxim of the law is *volente non fit injuria ;* and no one ever supposed that one party could recover from another damages for self-inflicted injuries.

After a patient and thorough study of all the authorities within our reach, we are unable to find a single case where it has been adjudicated that " where cattle are trespassers upon a railroad, their owners cannot maintain an action against the railroad company for running over and killing them by their cars, even if the death of the cattle were occasioned by the *gross* negligence of the defendants." The cases relied upon to sustain this doctrine are that above cited, from which the instructions were taken ; *Tallmadge vs. The Rensselaer & Saratoga R. R. Co.,* 13 Barb., 493 ; *Marsh vs. The N. Y. & Erie R. R. Co.,* 14 id., 365 ; *Terry vs. N. Y. Central R. R. C.,* 22 id., 574 ; *Tonawanda R. R. Co. vs. Munger,* 5 Denio, 255 ; S. C., affirmed, 4 Comstock, 349.

A particular statement here of the facts of each of these cases would require too much space, but it will appear at once, from an examination of them, that in neither was the question of the destruction of cattle, by the *gross negligence* of the defendants, raised, and that no opinion upon that question was necessary for their decision. It is very evident that in Clark's case, the facts of which we have stated, no such question was before the court. The same is true of the case in the 13th Barber and 5th Denio. In these cases there was not only *no* negligence shown on the part of the defendants, but the proofs were that, for the purpose of avoiding the collisons, they used a degree of diligence equal and even superior to the exigencies of each occasion. In the cases in the 14th and 22d of Barbour there was no proof as to the manner in which the cattle were killed, and of course no inference that the defendants were guilty of gross negligence could be drawn. The cases of *Williams vs. Michigan Central R. R. Co.*, 2 Gibbs' Mich. R., 259, and *N. Y. & Erie R. R. Co. vs. Skinner*, 19 Pa. R., 298, may also be said to sanction this doctrine. In the former the agreed statement of facts repels any presumption of negligence on the part of the company, whilst the latter was decided upon the ground that there was absolutely no evidence of negligence or gratuitous damage on the part of the plaintiffs in error. In the latter case also the doctrine that the company would be responsible for wanton or needless damage is expressly recognized. Thus it appears that the doctrine as yet rests in mere *obiter dicta*, without a direct authority in its favor. Trespassers are not outlaws, and before a doctrine so repulsive to justice and reason, and so contrary to the uniform tenor and rules of the common law in similar cases, is to be adopted, it ought at least to be sustained by one direct adjudication.

In the case of *Munger vs. The Tonawanda R. R. Co.*, 5 Denio, 255, the supreme court seem to have gone upon the

ground that there was no distinction between the different degrees of negligence, and that the defendants could only be made liable for designed and intentional mischief. The court of appeals, contrary to the facts, assumed that the injury might have been avoided by ordinary care, on the part of the defendants, and held that they were not bound to exercise it against cattle trespassing upon their road. Judge Story, in his work on Bailments, says there are three degrees of negligence, which correspond with the three degrees of diligence, and defines ordinary negligence to be the want of ordinary diligence; slight negligence the want of great diligence; and gross negligence the want of slight diligence. He defines ordinary diligence to be that degree of prudence which men in general exert in respect to their affairs; and slight diligence to be that which persons of less than common prudence or of any prudence at all take of their own concerns. Sir William Jones says that gross negligence is *dolo proximus*, a practice equal to fraud. That is, that omission of care which even the most inattentive and thoughtless never fail to take of their own concerns. Lord Denman, C. J., in *Lynch vs. Nurdin*, 1 Adol. & El., 28, (41 E. C. L., 422,) says: " Between willful mischief and gross negligence the boundary line is hard to trace; I would rather say impossible. The law runs them into each other, considering such a degree of negligence as some proof of malice. It is then a matter strictly within the province of the jury deciding on the circumstances of each case."

Where the facts show such a degree of rashness or wantonness on the part of the servants of the company as evinces a total want of care for the safety of the cattle, or a willingness to destroy them, though such destruction may not have been intentional, we think it is no departure from justice or principle, to hold the company responsible, unless it appears that the plaintiff was equally negligent. Any other rule

Stucke vs. Mil. & Miss. R. R. Co.

would confer upon railroad companies special privileges and immunities not enjoyed by private individuals and other corporations. In the absence of statutes to the contrary, we understand that their liabilities for wrongs are to be determined upon the same principles as the liabilities of private persons *Phil. & Reading R. R. Co. vs. Yeiser,* 8 Barr, 366 ; *Burroughs vs. Housatonic R. R. Co.,* 15 Conn., 124 ; *Hooker vs. N. H. & Northampton R. R. Co.,* id., 321.

In the case of the horse or ox of a stranger trespassing upon the close or land of a private individual, no one would contend that he would be justified in destroying them by an act grossly wanton and negligent.

In the absence of a statute requiring it, it is generally well settled that railroad companies are not obliged to fence between themselves and adjoining landholders. *Pierce on American Railroad Law,* 321, and cases there cited. The reason of the rule is sometimes said to be that the expense of building and maintaining fences is allowed to the adjacent owner as part of the compensation which he receives for the land taken. This rule of damages was adopted by this court in the case of the present defendants, *Plaintiffs in error vs. Eble,* 4 Chand., 72.

We can find no statute either general or special, imposing upon them the duty of fencing their road. Under these circumstances, if it had appeared that the plaintiff had permitted his cattle to be at large upon, or in the vicinity of the road, or had suffered them to range in places where it was even remotely probable that they would stroll upon the track, or if, being present at the time of the injury, and knowing the danger to which they were exposed, he had made no effort to remove them, in either case he would have been grossly and culpably negligent, and a different rule of law might prevail. Such negligence, by reason of the danger to which it exposes human life, ought to be punished criminally.

Stucke vs. Mil. & Miss. R. R. Co.

But who would say that the owner of stock, who has prudently and cautiously provided against their escape, ought, in case they accidentally do so, to be placed on an equality with such a man?   In such case, although the cattle are technically trespassers, ought not the company to be held responsible for their wanton and unnecessary destruction?   The obligation of diligence is relative, and its presence or absence in one party is required or excused in proportion as it is absent or present in the other.   The care required by the law is in the party, not the brute, which, though endowed with the powers of locomotion, is not supposed to exercise care.

In *Munger vs. The Tonawanda R. R. Co.*, (*Supra*,) it is assumed as the rule of law, that any negligence on the part of plaintiff, no matter what may be its degree, or whether it is remote or proximate, will defeat his action.   An examination of the cases on this question, will show that this assumption is incorrect.   The rule of law in such cases, is stated with such great accuracy and clearness in the case of *Trow vs. The Vermont Central R. R. Co.*, 24 Vermont R., 487, that we cannot do better than to quote the language of the court.   They say: " On this question the following rules will be found established by the authorities.   When there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained.   In the use of the words ' proximate cause,' is meant negligence occurring at the time the injury happened.   In such case no action can be sustained by either, for the reason, that as there can be no apportionment of damages, there can be no recovery.   So where the negligence of the plaintiff is proximate, that of the defendant remote, or consisting of some other matter than what occurred at the time of the injury, in such case no action can be sustained, for the reason that the immediate cause was the act of the plaintiff himself. Under this rule falls that class of cases where the injury arose

from the want of ordinary and proper care on the part of the plaintiff at the time of its commission. These principles are sustained by *Hill vs. Warren*, 2 Stark. R., 377; 7 Met., 274; 12 Met., 415; 5 Hill, 282; 6 Hill, 594; *Williams vs. Holland*, 6 C. & P., 23. On the other hand, when the negligence of the defendant is proximate, and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault. This seems to be now settled in England and in this country. Therefore, if there be negligence on the part of the plaintiff, yet, if at the time when the injury was committed, it might have been avoided by the defendant, in the exercise of reasonable care and prudence, an action will lie for the injury."

This last rule must of course be understood to apply only to those cases where the parties are equally in the exercise of rights, and not to accrue when the plaintiff is a trespasser, for then the defendant would be held to see that no damage was done through his gross negligence. It would however be applicable to cases of accidents occurring at crossings and such other places, on the lines of railroads where men and animals have the right to be, for the purpose of going from one place to another.

There is another rule, not mentioned by the court, in that portion of the opinion which we have quoted, but which is clearly established by the authorities, and excludes a recovery. It is where the mutual negligence of the parties is the remote cause of the injury, there being no lack of ordinary care at the time of its happening. Upon this question, the case from which we have quoted is exactly in point. There the defendants, who were obliged by law to fence their road and provide it with suitable cattle guards, had been negligent in omitting to do so. The plaintiff was also guilty of negligence in permitting his horse, which was destroyed, to run at large in the highway, and in the uninclosed land near the rail-

road track, knowing the condition of the railroad and the danger to which he was exposed. Inasmuch as no negligence in the manner of conducting the engine at the time the horse was killed, was shown, it was held that the action could not be sustained, for the reason that the negligence which occasioned the death of the horse was, as to both parties, mutual and remote. The cases of *Blythe vs. Topham,* Cro. Jac., 158; and *Bush vs. Brainard,* 1 Cow., 78; both cited in *Tonnewanda R. R. vs. Munger,* 5 Den., 225, as well as in nearly all the modern cases, in support of the doctrine that a plaintiff cannot recover when his own negligence has contributed to the injury, are both strongly illustrative of this rule.

The former may be regarded as the leading English, and the latter the leading American case upon this branch of the subject. In the former case the defendant having dug a pit in the common, the plaintiff's mare, while *straying there,* fell into it and was killed. After verdict, on motion of the defendant, in arrest of judgment, it was held that the action would not lie, and judgment was arrested. In the latter case the defendant had left some maple syrup in buckets in an open shed on his own uninclosed wood lands. The plaintiff's cow came in the night and drank the syrup, which caused her death. It was decided that the plaintiff could not recover. The defendant was held to have been guilty of negligence in exposing his syrup; and the plaintiff in permitting his cow to go at large. In both these cases the negligence of each party was remote, and had no immediate or necessary connection with the injuries. But if in the former, the defendant knowing that the plaintiff's mare was straying in the common, without notice or warning to him, had dug the pit; or if in the latter case, the defendant, under similar circumstances, had exposed the syrup, who would say that the results would not have been different? The books abound in cases exemplifying this rule, which it is unnecessary for us to cite here. The

Stucke vs. Mil. & Miss. R. R. Co.

doctrine that there can be no recovery where the negligence of the parties is mutual and proximate, will be found most frequently illustrated 'in the numerous cases growing out of the collision between persons and carriages upon public highways, and boats and vessels upon navigable waters, where' the parties themselves, or their agents or servants, were generally present at the time the injuries were received. The following are some of the cases of that kind : *Hill vs. Warren,* 2 Stark. R., 377, (3 E. C. L. R., 390;) *Pluckwell vs. Wilson,* 5 Car. & P., 375, (24 E. C. L. R., 368;) *Bass vs. Litton,* 5 Car. & P., 407, (24 E. C. L. R., 384;) *Luxford vs. Large,* 5 Car. & P., 421, (24 E. C. L. R., 391;) *Vanderplank vs. Miller,* 1 M. & M., 169, (22 E. C. L. R., 280;) *Williams vs. Holland,* 6 Car. & P., 23, (25 E. C. L. R., 261;) *Sills vs. Brown,* 9 Car. & P., 601, (38 E. C. L. R., 245;) *Wolf vs. Beard,* 8 Car. & P., 373, (34 E. C. L. R., 435;) *Hawkins vs. Cooper,* 8 Car. & P., 473, (34 E. C. L. R., 485;) *Lack vs. Seward,* 4 Car. & P., 106; (19 E. C. L. R., 298;) *Beers vs. Housatonic R. R. Co.,* 19 Conn. R., 566; *Monroe vs. Leach,* 7 Met., 274.

In addition to the authorities cited by the court in *Trow vs. Vt. Central R. R. Co.,* 24 Vt. R., 487, to sustain the doctrine that there can be no recovery where the negligence of the plaintiff is proximate and that of the defendant remote, or consisting of something other than what occurred at the time of the injury, the following may be found : *Butterfield vs. Forrester,* 11 East, 60; *Marriatt vs. Stanley,* 1 M. & G., (39 E. C. L. R., 559;) *Ilott vs. Wilkes,* 3 B. & A., 304, (5 E. C. L. R., 295;) and *Saick vs. Blackburn,* 4 C. & P., 297.

In *Butterfield vs. Forrester,* which is the leading case upon this question, the defendant, for the purpose of making some repair to his house, which was close by the road, and at one end of the town, had put a pole across part of the road, leaving a free passage by another branch or street in the same direction. The plaintiff left a public house not far distant from

the place in question, at eight o'clock in the evening, in August, there being light enough to observe the obstruction at 100 yards distance, and, if he had not been riding very fast, he might have observed and avoided it; however he did not observe, but rode against it, and fell with his horse, and was much hurt by the accident; there was no evidence that he was intoxicated at the time. The jury was instructed that, if a person riding with reasonable and ordinary care, could have seen and avoided the obstruction; and, if they were satisfied the plaintiff was riding along the street extremely hard and without ordinary care, they should find a verdict for the defendant; which they accordingly did. On a motion for a new trial, on the ground of misinstruction, Lord Ellenborough said: "One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action; an obstruction in the road, by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

*Davis vs. Mann*, 10 Meeson & Welsby, R., 545; *Bridge vs. The Grand Junction Railway*, 3 id., 244; and *Mayor of Colchester vs. Brooke*, 7 Adol. & El., 339 (53 E. C. L. R., 339); are instances of recovery where the plaintiffs were wrong doers, and remotely negligent, but where the negligent conduct of the defendants was the immediate cause of the injuries, see, also, *Bird vs. Holbrook*, 4 Bing., 628; and *Johnson vs. Patterson*, 14 Conn., 1. In *Davis vs. Mann*, the plaintiff having fettered the fore feet of a donkey belonging to him, turned it into a public highway, and at the time in question the donkey was grazing on the off side of the road about eight yards wide, when the defendant's wagon, with a team of three horses, coming down a slight descent, at what was termed a smartish pace, ran against the donkey, knocked it down, and the wheels passing over it, it soon

died. Although the plaintiff's act was both unlawful and negligent, "still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on a public highway, or even over a man being asleep there, or the purposely running against a carriage going on the wrong side of the road." The action was for carelessly and negligently driving against the donkey, and there was no pretence that the injury was intentional.

The cases of *Lynch vs. Nurdin*, 1 Ad. & El., 28 ; *Bridge vs. Gardner*, 19 Conn., 507 ; and *Robinson vs. Cone*, 22 Vermont, 213, where this rule seems to be reversed, rest upon principles peculiar to themselves. In those cases although the negligence of the plaintiff was proximate, and that of the defendants remote, yet they were permitted to recover on account of the extreme youth of the plaintiffs, and their consequent inability to exercise ordinary care at the time the injuries occurred.

The views which we have taken in relation to the liability of railroad companies for negligence have been adopted and sustained by the English and most of the courts in the American states, as will be seen by a perusal of the authorities cited below. In many of the states they have gone much further, and held that, although cattle are trespassers, the companies are bound to the exercise of ordinary care to avoid injuring them. This is holding them to the same degree of care and caution where cattle are *wrongfully* as where they are *rightfully* upon the track, a rule which we do not think is warranted by principle.

An adherence to the rule which we have adopted will, we believe, promote safety to the lives of persons and to property so largely entrusted to their care. Collisions and disasters will be less frequent. The bitterness and animosities which would be engendered on the part of those suffering wrongs,

by the insolence and wantonness of companies and their em-
ployees, which by the relaxation of the rule the law would
fail to redress, would be productive of far greater evils than
the paltry inconveniences to which companies may sometimes
be subjected, could possibly counterbalance.   The following
are the cases to which we have above referred.  *Rickets vs. The
East and West India Docks and Birmingham Junction
Railway Co.,* 12 Eng. Law and Eq. R., 520 ; *Perkins vs.
Eastern R. R. Co.,* 29 Me., 307 ; *Jackson vs. R. & B. R. R.
Co.,* 25 Vt. R., 150 ; *Morse vs. Same,* 27 id., 49 ; *Hurd vs.
Same,* 25 id., 116 ; *Morse vs. B. & M. R. R. Co.,* 2 Cush.
R., 534 ; *Beers vs. Housatonic R. R. Co., Supra ; Trow vs.
Vt. Cen. R. R. Co., Supra ; White vs. Concord R. R. Co.,*
10 Foster, 188 ; *Norris vs. Androscoggin R. R. Co.,* 39 Me.,
273 ; *Louisville & F. R. R. Co. vs. Milton,* 14 B. Monroe,
75 ; *Housatonic R. R. Co. vs. Waterbury,* 23 Conn., 102 ;
*Danner vs. S. C. R. R. Co.,* 4 Rich. L. R., 329 ; *R. R. Co.
vs. Sineath,* 8 id., 185 ; *Chi. & M. R. R. Co. vs. Patchin,*
16 Ill., 198 ; *Gt. W. R. R. Co. vs. Thompson,* 17 id., 131 ;
*Chi. & R. I. R. R. Co. vs. Still,* 19 id., 499 ; *Vandergrift
vs. Rediker,* 2 Zab. (N. J.) R., 185 ; *Lafayette & Ind. R. R.
Co., vs. Skinner,* 6 Ind., 145 ; *Kerwhacker vs. C. C. & C. R.
R. Co.,* 3 Ohio State R., 172 ; *C. H. & D. R. R. Co. vs. Wa-
terson,* 4 id., 424 ; *Galena & Chicago Union R. R. Co. vs.
Jacobs,* 20 Ill., 478.

, In the latter case the English and American authorities,
upon injuries arising from negligence, are fully and ably re-
viewed.   The court held " that the question of liability did
not depend absolutely on the absence of all negligence on the
part of the plaintiff, but upon the relative degree of care or
want of care as manifested, by both parties."   It is for the
jury to determine under proper instructions from the court
whether there has been negligence, and its nature and
degree.

It follows from what we have already said, that the last instruction given for the defendants was erroneous. It precluded a recovery under any circumstances; for a negligent destruction of the cattle.

The instructions asked by the plaintiff were both properly refused. The first for the reason that the plaintiff was proceeding for a *negligent*, and not a *wilful* destruction of his property, and it was not incumbent on the court to divide the instruction, and give that part which might have been proper refusing the residue. The last for the reason that the action was not brought for negligence in not fencing the road, and for the still better reason that the defendants were not obliged to do so.

The judgment of the circuit court is reversed, and a new trial awarded.