## Brown vs. The Milwaukee and Prairie du Chien Railway Company.

*Railroad companies ; liability for failure to maintain fences.*

1. Where a railway company fails to *maintain*, as well as *erect*, such a fence as the statute requires, along the line of its road, its liability for injury to animals which get upon the track in consequence of such failure, is absolute.
2. If, however, such a fence should be suddenly destroyed by unavoidable accident, the company would perhaps not be subject to such absolute liability, in case immediate steps were taken to rebuild.

APPEAL from the Circuit Court for *Dane* County.

Action for injuries done to plaintiff's horses by a train on defendant's road, to which they escaped from an adjoining field. The only question of fact at issue was, whether the escape was caused by defendant's failing to maintain in proper condition a certain set of bars in a fence between the track and land belonging to one Oleson. It appeared from the evidence that the fence and bars were of the full height required by law; that the accident happened in the night of August 6th; that

the next morning a cleat or batten, which had been nailed to the post at one end of the bars, and by which they had been confined in place, was lying upon the ground, and the bars (none of which were broken) were down at that end; that the cleat had been nailed to the post with eight 12-penny nails about the middle of the preceding May; that when in its place it projected above the post; that after the accident the upper end of it looked as if it had been pounded by a stone, and there was a stone lying near by, of the weight of four or five pounds; and that several of the nails had remained in the post. their heads being drawn through the batten. It further appeared that the horses had been pastured a short time before in an enclosure on the opposite side of the road, and that there was a field belonging to Oleson adjoining that enclosure, and separated from it by a fence. Oleson, for the plaintiff, testified: "these horses had been in my field a couple of times; once the white horse jumped over my fence, which was a good rail fence about four feet high; and once he pushed it down and they all got in. I spoke to *Brown*, and after that I saw the white horse tied down, and then he did not get in."

The same witness stated that he "had not been at the bars for some time before the accident—probably two months before." The defendant objected to the witness testifying as to the condition of the bars at that time: but the objection was overruled, and he said that " the nails were getting out a good many times;" that "the batten was loose at the time;" and that it "had been used a good many times," &c. There was evidence for the plaintiff tending to show that the upper bar was so short as to be easily sprung out of its place. It appeared that after the horses were put into the field from which they escaped, the white horse above mentioned was not tied down. The defendant's evidence tended to show that the bars were in a good condition.

The following instructions were given: "1st. The railroad

company was bound to keep up a fence and bars four and one-half feet high, of that substantial construction required by ordinary care and diligence between other adjoining land owners. Ordinary care and diligence is that which men of ordinary care and prudence exercise in the management of their affairs. 2d. While the defendant was only bound to observe this rule, and could not be held to greater strictness, yet in view of the great danger to the domestic animals of the adjoining land owners, if they escaped upon the track, it should be held to a full and strict compliance with this rule of law. 3d. If defendant's bars were lawful, and plaintiff's horses escaped upon the track by reason of breachiness or any other cause, plaintiff cannot recover." The defendant asked the following: "Notwithstanding the bars where the horses entered may have been in some particular respect out of repair, yet, if they overcame the strength of the bars at a point where there was no defect, then the defendant was not liable. To apply the rule directly to the case, although you may believe from the evidence that the bars may have been easily sprung out by bending them, yet, if the horses did not escape by bending them out, but by forcing down the cleat at the end when it was reasonably secure, *you should find for the defendant.*" The court modified this instruction by substituting for the words in italics, the following: "And if the cleat was secured in such manner as ordinary care and diligence required, according to the definition that I have given you, and if the defective posts—if any other defect there were—did not contribute to the failure of the cleat, or the damage occasioned thereby, then the defendant would not be liable on account of any such other defects."

The following instructions, asked by defendant, were refused:
"2. If you should find that a proper fence had been constructed, and that at the time of the accident it was out of repair, or in some respects imperfect, still, if the negligence of the plaintiff contributed, or was the preponderating cause in producing

the injury, the defendant is not liable. 3. If the defendant's bars were lawful, and plaintiff's horses escaped upon the track by reason of breachiness or any other cause, plaintiff cannot recover."

Verdict for the plaintiff; motion for new trial denied; and judgment on the verdict; from which defendant appealed.

*Gregory & Pinney*, for appellant, contended that under secs. 1 and 2, ch. 268, Laws of 1860, the *absolute* liability of the company ceased when the fence had been *erected*, citing *Hance v. Cayuga & S. R. R. Co.*, 26 N. Y., 428. Even if this were not so, the instructions were erroneous. *Marsh v. N. Y. & E. R. R. Co.*, 14 Barb., 364. 2. The evidence showed the accident to have resulted from the breachy, vicious disposition of one of the horses, which was well known to the plaintiff; and that it was gross carelessness in him to turn that horse into the pasture adjoining the road without tying him down; and in that case defendant was not liable, even under the reasonings of the court in *Corwin vs. N. Y. & E. R. R.*, 13 N. Y., 42. 3. The evidence was not sufficient to sustain the verdict. It is clear so much force was used in pushing off the cleat, as to draw the heads of the nails through the board. Will the court then uphold a verdict which finds that *in that respect* these bars were insufficient? The company was not bound to build a fence so strong that a large, strong vicious horse *could not* push it down. 4. The evidence of Oleson as to the condition of the fence two months or more before the accident, should have been rejected.

*Hopkins & Foote*, for respondent, cited ch. 268, Laws of 1860; Redfield on Railways, 373; *Clement v. Canfield*, 28 Vt., 302; *Dunnigan v. Ch. & N. W. R. Co.*, 18 Wis., 28; 4 Yerg., 36.

DIXON, C. J. The defendant's counsel seem to misapprehend the decision in *Hance v. The Cayuga & Susquehanna Railroad Company*, 26 N. Y., 428. The court did not decide that the absolute liability under the statute ceased when the fences

had once been erected.   The N. Y. statute, like our own, provides that when such fences shall be duly made *and maintained*, the railroad company, or other party having control of the road, shall not be liable for any such damages, unless wilfully or negligently done.   Laws of 1860, chap. 268.   The turning point in that case was, not that the company had neglected to build and maintain sufficient fences and cattle guards, for it appears that it had done both, but that it had been guilty of negligence in another respect not within the statute ; that is, in not removing the snow from underneath the cattle guard. In such case the negligence of the plaintiff may very properly have been taken into account in determining whether he was entitled to recover, but it does not show that the same rule is to prevail when the injury arises through a defect of fences which have once been erected.  The statutory liability is abso-lute, and continues unless the fences are *maintained* as well as erected.   This disposes of the second instruction asked by the defendant and refused by the court, the court having already correctly instructed the jury as to the duty of the company in keeping up its fences, and that being the only question at issue.

There was also another reason for refusing the instruction. There was no sufficient evidence that the white horse was breachy.   It did not appear that he was accustomed to or ever had jumped or pushed down a lawful fence.   Mr. Oleson's fence was only " about four feet high."   An animal that would jump or push down such a fence might never attempt the same thing with one of the requisite statutory height and strength.

The first instruction asked by the defendant and refused in form, though given with a slight modification by the court, is not the subject of complaint here.   It seems to have been as favorable to the defendant as the circumstances of the case required.

The testimony of the witness Oleson was admissible for the

purpose of showing the negligence of the company in not repairing the fence—that its defective condition was or ought to have been known to the agents and employees of the company. If the fence should be suddenly destroyed by some accident against which it is impossible for the company to provide, it may be that it would not be subject to the absolute liability of the statute, if immediate steps were taken to rebuild. The jury were instructed that the company, in keeping up the fence, were only bound by that ordinary care and diligence observed between other adjoining land owners. At all events the jury could not have been misled by the testimony, as they must have understood that it was the defective condition of the fence at the time of the injury for which the company were responsible.

Another objection is, that the verdict is unsupported by evidence. We cannot agree with the counsel in this. There clearly was some evidence to sustain the verdict.

*By the Court.*—Judgment affirmed.