LAWRENCE vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

RAILROADS.   *Defective fences:   Injury to animals:   Contributory negligence.*

1. Whether or not contributory negligence would be a defense to an action for an injury arising from the failure of a railroad company to construct a fence as required by the statute, such negligence may defeat an action for an injury arising from failure of the company to maintain in repair such a fence, once built.   *Jones v. S. & F. du L. R. R. Co., ante,* p. 306.

2. Sec. 1, ch. 268 of 1860, and sec. 30, ch. 119 of 1872, make railroad companies responsible for damages *occasioned* by failure to fence their tracks, as there required; and, in an action under those statutes, the injury complained of must be affirmatively shown to have been caused by the want of a proper railroad fence, the evidence connecting the injury with the want of a fence at some point on the road (whether near to or distant from the plaintiff's premises), and showing that the one was the consequence of the other.

APPEAL from the Circuit Court for *Manitowoc* County.

Action for the killing of plaintiff's ox by a train on the defendant's railroad, on the 30th of December, 1875.   The complaint avers that on account of defendant's failure to build or maintain good and suitable fences, or any fences at all, as required by secs. 34 and 35, ch. 76, Tay. Stats. (secs 1 and 2, ch. 268 of 1860), the ox in question strayed upon defendant's track, at a place specified; and that defendant so negligently ran and managed its locomotive and cars, and its track, that the ox was run over and killed, without any fault on plaintiff's part.

On the trial, defendant objected to the introduction of any

Lawrence vs. The M., L. S. & W. R'y Co.

evidence under the complaint, because it did not allege that plaintiff was the owner of any land adjacent to the railroad; but the objection was overruled.

The general effect of the evidence on plaintiff's part, as understood by this court, will sufficiently appear from the opinion. At its close, the circuit court, on defendant's motion, rendered a judgment of nonsuit; from which the plaintiff appealed.

For the appellant, a brief was filed by *White & Forrest*, and the cause was argued orally by *G. A. Forrest*. They contended, 1. That the statute requiring railway companies to fence their tracks (Tay. Stats., ch. 76, § 34), is a police regulation designed to secure the safety of public travel and transportation, and that of animals, which, in the absence of such fences, might stray upon the track and be injured; and that it was not necessary for one whose cattle were thus injured to allege or show that he owned land adjacent to the track. *Wilder v. Me. Cent. R. R. Co.*, 65 Me., 332; *Thorpe v. R. & B. Railroad Co.*, 27 Vt., 140; *Browne v. P., H. & F. R. R. Co.*, 12 Gray, 55; *McCall v. Chamberlain*, 13 Wis., 637; Shearm. & Redf. on Neg., § 469; 1 Redfield on R. W., 490, §§ 13, 14. 2. That the only questions in the case were, whether the company had erected and maintained a legal fence on both sides of its roadway, and, if not, whether plaintiff's ox was killed by the train in consequence of the company's default in that respect; that the question of contributory negligence on plaintiff's part was unimportant; that the action rests upon the statute, and unless the statute has changed the common law, it is useless; that similar statutes have been enacted in England, and in the states of Maine, New Hampshire, Vermont, Massachusetts, Connecticut, Michigan, Illinois and Missouri, and under them railroad companies have been held liable for injuries done where they had failed to comply with the statute, without other proof of negligence, and without regard to what would generally be deemed contributory negli-

gence on the part of the owner of the animals, or to the fact that they were trespassing when injured. *Fawcett v. R. R. Co.*, 71 E. C. L., 610; *Sharrod v. L. & N. W. Railway Co.*, 4 Exch., 587 (6 R. W. Cas., 239); *Wilder v. Me. Cent. R. R. Co.*, *supra;* *Norris v. R. R Co.*, 39 Me., 273; 46 id., 166; *Smith v. Eastern Railroad Co.*, 35 N. H., 356; *Horn v. Railway Co.*, id., 169; *Clement v. Canfield*, 28 Vt., 302; *Rogers v. Railroad Co.*, 1 Allen, 16; *Browne v. P., H. & F. Railroad Co.*, *supra;* *Isbell v. N. Y. & N. H. Railroad Co.*, 27 Conn., 393; *Corwin v. N. Y. & E. Rairoad Co.*, 13 N. Y., 45; *Shepard v. B., N. Y. & E. R. R. Co.*, 35 id., 641; *Staats v. Hudson Riv. R. R. Co.*, 3 Keyes, 196; *Gardner v. Smith*, 7 Mich., 410; *Galena & Ch. U. R. R. Co. v. Crawford*, 25 Ill., 529; *Gilman v. R. R. Co.*, 12 Am. Law Reg. (N. S.), 555; *Burton v. N. M. R. R.*, 30 Mo., 372; *McCall v. Chamberlain, supra;* *Bennett v. C. & N. W. Railway Co.*, 19 Wis., 145; *Blair v. M. & P. du C. R. R. Co.*, 20 id., 254; *Brown v. M. & P. du C. R. R. Co.*, 21 id., 39; *Antisdel v. Railway Co.*, 26 id., 145; *Kellogg v. Railway Co.*, id., 223; *Laude v. Railway Co.*, 33 id., 640. 3. That if this court should not be disposed to reaffirm the doctrines just stated (39 Wis., 129), still there was no proof in this case of negligence on plaintiff's part contributing directly or proximately to the injury, the cattle having escaped without his knowledge, and the dangerous sickness by which he was prevented from giving them his personal care, and the storm which had prostrated his fence, being acts of God which conspired to take the question of his negligence out of the case. *C. & N. W. Railway Co. v. Goss*, 17 Wis., 428; *Fisher v. F. L. & T. Co.*, 21 id., 73; *Stucke v. M. & M. R. R. Co.*, 9 id., 202; *Kellogg v. Railway Co.*, 26 id., 223; *Pitzner v. Shinnick*, 39 id., 129; *Laude v. Railway Co.*, 33 id., 640; *I. & C. Railroad Co. v. Meek*, 10 Ind., 502; 19 Ill., 499; 42 id., 288; 43 id., 64; 46 id., 74; 58 id., 300; 62 id., 326. 4. That the trial court should at least have submitted the questions of fact to the jury. *Wilder v. Me. Cent. R. R. Co.*,

*supra*; 28 Vt., 180, 184; 15 N. Y., 476; 17 Wis., 499; 18 id., 347; 19 id., 489; 35 id., 118; 39 id., 129.

For the respondent, a brief was filed by *Cottrill & Cary*, and the cause was argued orally by *J. P. C. Cottrill*. On the subject of contributory negligence as a defense in such cases, they cited *Trow v. Vt. Cent. R. R. Co.*, 24 Vt., 487, 493, 497; *C. & N. W. Railway Co. v. Goss*, 17 Wis., 428, and cases there cited; *Bennett v. Railway Co.*, 19 id., 148; *Laude v. Railway Co.*, 33 id., 640; *Pitzner v. Shinnick*, 39 id., 129; *Hoyt v. Hudson*, 41 id., 111–12; id., 683. They also contended that ch. 248 of 1875 was an implied repeal of former laws relative to the fencing of railways; and that under that act the complaint herein was defective because it did not allege that defendant's road, at the place where the accident occurred, ran through inclosed lands.

RYAN, C. J. The appellant gave no evidence showing or tending to show that the respondent was guilty of any negligence in running the train which killed the ox. Indeed, all the evidence on that subject goes to disprove any immediate negligence of the respondent in the mere killing of the animal. If the respondent, therefore, be chargeable with any negligence, it must be in something which led to the presence of the animal on the track, exposing it to injury by the passing train.

The want of fences on the line of the railroad, as required by law, is the excuse set up in the complaint for the presence of the ox on the railroad.

The appellant gave no evidence tending directly to show where or how the ox came upon the track. The animal was not seen on the track by any witness before the accident, which appears to have happened directly west of the appellant's house, on land east of the railroad, but not adjoining it.

The appellant gave some evidence of the want or insufficiency of fences on the west side of the railroad, opposite his

premises on the east side. There is nothing in the evidence warranting a belief that the animal came upon the track from the west. In order to have done so, indeed, it seems that it must have escaped from the east side and crossed the railroad to the west side. We cannot, therefore, but regard the evidence of the condition of the fences on the west side as immaterial.

The appellant gave evidence tending to show that the respondent had built a sufficient fence on the east side of the railroad, from the railroad crossing on the south road, so called, to a point some fifty rods north of the place of the accident, intersected by several cross fences; but that from thence north some sixty-four rods, to the railroad crossing on the Calumet road, so called, the respondent had built no fence; that there was no fence on the east line of the railroad for the latter distance; but that some six rods east of the railroad there was or had been a fence, and some rods east of it a second fence, presumably belonging to the owners of the land.

The appellant testified in his own behalf, that all the fences mentioned on the east side of the railroad, as well as his own fence nearest the railroad, had been blown down by a violent storm some few days before his ox was killed. He gave no evidence whatever tending to show notice, express or implied, to the respondent, or unreasonable delay of the respondent, under the circumstances, in restoring the fence so suddenly and recently prostrated. *Brown v. M. & P. Railway Co.*, 21 Wis., 39.

Assuming the condition of things to which the appellant himself testified, it seems like wantonly courting such an accident, to turn his cattle loose for the day, in midwinter, so near the railroad, with no one to look after them; and we surely cannot be expected to accept as excuse, the negligence of those to whom his sickness compelled him to trust the care of his cattle. This appears to us to be as bad a light as any in which the appellant's case can be regarded.

But we cannot think that the court below was bound to accept the appellant's own evidence, in this respect, against that of his witnesses. None of them confirm the appellant's statement that any of the fences had been blown down at the time of the accident. On the contrary, some of them, with perhaps better opportunities of knowing, gave direct evidence that the railroad fence, west of the plaintiff's house and premises, was standing at the time of the accident; and their evidence raises a strong presumption that the appellant was equally mistaken as to all the fences, and that all the fences mentioned on the east side of the railroad were standing at the time of the accident. If the learned judge, who heard the witnesses, so held in granting the nonsuit, we cannot say that he was in error.

In either view of the case, the nonsuit appears to have been properly granted.

Whichever way we regard the evidence, it appears to be immaterial whether or how far ch. 248 of 1875 operates to modify secs. 30 and 31 of the general railroad act of 1872.

It must be confessed that there is some discrepancy in the cases in this court, construing and enforcing the liability of railroad companies upon failure of duties imposed by statute. In the case of *Jones v. S. & F. R. R. Co.*, considered and decided at the same time as this [*ante*, p. 306], notwithstanding some things said or ruled in *McCall v. Chamberlain*, 13 Wis., 637, *Brown v. M. & P. R. W. Co.*, 21 id., 39, *Laude v. C. & N. W. Railway Co.*, 33 id., 640, and perhaps other cases, we hold that, while we are not now prepared to say whether or not contributory negligence would be a defense to an action for injury arising from the failure of a railroad company to construct a fence as required by the statute, contributory negligence of the plaintiff may defeat an action for injury arising from failure of a railroad company to maintain in repair such fence, once built. The principles on which numerous cases in this court rest, admitting contributory negligence as a defense in

actions against railroad companies for injuries arising from unlawful speed of trains within corporate limits, appear certainly to sanction the application of the same rule to the latter, if not to the former, class of cases under the statute requiring railroads to be fenced. The question will be fully considered in *Jones v. S. & F. Railroad Co.*, and need not be further discussed here.

It was said in argument, that this construction goes to neutralize the statute, and to relegate the subject to the common law. That is a mistake. Without the statute, railway companies would not be obliged to fence. *Stucke v. M. & M. Railroad Co.*, 9 Wis., 202.

This rule would undoubtedly defeat the appellant in this case, viewed in the light of his own testimony alone. For, assuming the negligence of the respondent in not restoring the fence within a reasonable time, which we are not quite prepared to hold in the circumstances disclosed, it would have been his own negligence, contributing directly to the injury, to leave his cattle at large for the day, without purpose and by mere inadvertence, after the object for which they had been turned out had been effected, within some seventy rods of an operated railroad, without fence or obstacle to keep them from it. The appellant himself appears to have felt this, and throws the responsibility upon his sons. But they were his servants, and their negligence in his service was his. In case of sudden destruction of a railroad fence by the elements, in midwinter, at a time of successive and severe storms, it would be an abuse of sound principle, and unjust, to hold the respondent to so severe a rule of diligence, and to hold the appellant to so lax a rule, as would support this action, upon the appellant's own statement of the facts.

In the case made by the appellant's other witnesses, the railroad was duly fenced where the extension of the appellant's lines would strike it, and where the injury occurred, and for some distance either way. North of the appellant, it was not

Lawrence vs. The M., L. S. & W. R'y Co.

fenced by the respondent, although there were two fences which the ox must have passed to reach the railroad at that place. There is no probability established by the evidence, far less a reasonable certainty, that it was there that the ox found its way to the railroad. If there had been a total want of railroad or other fence between the appellant's premises and the railroad, the jury might have been warranted in finding that the animal strayed directly from the place where he was left at large, to the railroad; and that the injury was therefore occasioned by want of fence there. But when there was a fence there and for some distance either way, and the evidence leaves it wholly uncertain where or how the ox, having strayed from the appellant's premises, got upon the track, the jury would not have been warranted in finding that the animal reached the track at a place not fenced by the respondent, merely because of the failure to fence there. The animal may have reached the track there by passing the two fences; or by the letting down of some bars giving access to the railroad near the spot where he was killed; or he may possibly have wandered to either of the highways mentioned, and scrambled over the cattle guards. He may have reached the track in some way which we cannot, and a jury could not properly conjecture. The trouble is, that the evidence leaves it wholly uncertain. Indeed, what seems to have been the first conjecture of the appellant, that the ox had been maliciously driven through the bars mentioned, appears to be as plausible a solution of the doubt as any other; a conjecture, by the way, not very consistent with the appellant's statement that the fences were then all down.

The case was evidently tried for the appellant upon the theory that the failure of the railroad company to fence elsewhere, and the killing of the ox by the passing train, constituted an absolute right of action. No construction of any of the statutes would warrant that position. Sec. 1, ch. 268 of 1860, pleaded in the complaint, and sec. 30 of ch. 119 of 1872,

in force at the time, make the railroad companies responsible for damages *occasioned* by failure to fence. The injury complained of must therefore be shown to be occasioned, that is, caused, by the want of a proper railroad fence. The injury must be affirmatively shown to be a consequence of the absence of a fence. It is true, that the injury may be caused by the absence of a proper fence at any place, whether adjoining or near or distant. But the evidence must connect the injury with the want of fence, and show that the one was a consequence of the other. Otherwise, railroad companies would be liable for injuries occurring where their roads are legally fenced, if they should be left unfenced at any point, however distant, or unconnected with such injuries. That is not the statute, and ought not to be.

*By the Court.* — The judgment of the court below is affirmed.