CAREY vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*September 5 — September 23, 1884.*

*(1, 2, 4) Railroads: Diligence in repairing fences: Right to take timber from adjoining lands: Injury to cattle: Contributory negligence. (3) Practice: When instructions to jury must be asked.*

| 61 | 71 |
|----|-----|
| 86 | 210 |
| 61 | 71 |
| 113 | 1 79 |

1. One who, knowing that a severe storm on Saturday had prostrated fences, on Monday evening turned his cattle upon uninclosed lands without inquiry as to whether the railroad fences abutting thereon were uninjured, was guilty of such contributory negligence as would defeat his recovery for injuries received by such cattle on the railroad track; and such facts appearing from his own evidence a nonsuit should have been granted.

2. A railroad company has no right, for the purpose of repairing its fences, to take timber or poles from the adjoining lands not owned by it.

3. The refusal to give to the jury an instruction which was not asked until the close of the charge, may be error.

4. A railroad company is bound only to use ordinary diligence in repairing its fences.

APPEAL from the Circuit Court for *Wood* County.

The plaintiff's cattle went upon the railroad track of the defendant company, and were run over by a passing train. Three of them were killed and another was injured. This action is to recover damages therefor. The undisputed facts, as shown by the pleadings, evidence, and special findings, are as follows:

The plaintiff resides in or near Centralia, within one hundred feet of the defendant's railroad leading from Tomah to that place. The railroad was properly fenced, and such fences had been maintained for several years preceding July 21, 1883. On that day (being Saturday) a strong wind was blowing in that vicinity, and such was its force that, between a point three fourths of a mile north of Centralia and Port Edwards,— said to be a distance of five miles,— the railroad fence was prostrated in thirty-five or forty places. The defendant's section foreman in charge of that portion of its railroad ascertained, during the same afternoon, the damage so done to the fences, and on the same day and the following Monday, with three men, proceeded to clear away fallen timber and brush, and to repair the fences as far as he could do so with the materials at hand. On the same Saturday evening he informed the road-master at Tomah of the destruction of the fences. The defendant's depot of lumber for erecting and repairing its fences was at Tomah, which is about forty-five miles southwest of Centralia. The road-master shipped the lumber from Tomah on Monday with which to repair the fences, and it reached Centralia Monday evening. The section foreman repaired the fences the next day. A freight train ran from Tomah to Centralia

on Saturday evening, and another on Sunday evening, both reaching Centralia about midnight.

The plaintiff turned his cattle at large at five o'clock on the same Monday evening, upon what he calls a "common." This was a tract of uninclosed land owned in severalty by the plaintiff and others, extending from the plaintiff's residence south, along the railroad track, two miles. There were no fences between the place where the cattle were turned out and the railroad fence. The plaintiff's cattle went from his premises, across the lands of two other owners, upon the railroad track, through one of the gaps in the railroad fence caused by the falling upon it of a tree which stood on the land of one Bowles. This gap was about half a mile south of plaintiff's residence. The fence was prostrated by the storm in eight places where it abutted the uninclosed lands upon which the cattle were turned. Some of those places were north and some south of the gap through which the cattle went upon the track. During Monday night a passing train ran upon the cattle, killing three of them and injuring another.

The plaintiff was at home, or in that vicinity, during the wind-storm of Saturday, and on that day or the next was informed that it had prostrated fences. He made no effort, before he turned his cattle loose, to ascertain whether the railroad fences had been blown down or injured.

The jury returned a special verdict, the substance of which is stated in the opinion. A motion for a new trial was denied, and judgment on such verdict for the plaintiff for the damages assessed by the jury was ordered and duly entered. The defendant appeals from the judgment.

*C. W. Briggs,* for the appellant, upon the question whether the company exercised proper diligence in repairing the fence, cited: *Jones v. C. & N. W. R'y Co.* 49 Wis. 352; *Goddard v. C. & N. W. R'y Co.* 54 id. 548; *Bennett v. C. & N. W. R'y Co.* 19 id. 145; *Brown v. M. & P. du C. R'y Co.*

Carey vs. The Chicago, Milwaukee & St. Paul R'y Co.

21 id. 39; *Jones v. S. & F. du L. R. R. Co.* 42 id. 306; *Lawrence v. M., L. S. & W. R'y Co.* id. 322.

*G. W. Cate*, for the respondent.

LYON, J.  A reversal of the judgment in this case is inevitable on either of two grounds.

1. The jury found specially that the plaintiff had knowledge of the storm which blew down the fences, but did not thereafter endeavor to ascertain whether the railroad fence was blown down along the uninclosed lands upon which he turned his cattle; also that he had no reason to believe or suspect, before he turned them out, that such railroad fence had been blown down, and that in so turning them out he was not guilty of negligence.

The undisputed evidence is that the plaintiff knew, when he turned out his cattle, that the storm had prostrated fences.  This, we think, was sufficient to put him upon inquiry as to whether the railroad fences abutting such uninclosed lands and across which the storm swept were uninjured, or whether they had been blown down.  Knowing the severity of the storm, and knowing that it had prostrated fences, it cannot truthfully be said that the plaintiff had no reason to believe or suspect that such railroad fences had been prostrated.  The finding in that behalf is therefore entirely unsupported by the evidence, and cannot be upheld. It should have been that the plaintiff had reason to believe or suspect that such fences had been blown down.  With a proper finding in this particular it is difficult to perceive how the jury could find the plaintiff not guilty of negligence which contributed to the loss of his cattle.  Had he known that the fences were down when he turned them out he would have been chargeable with contributory negligence, which would defeat a recovery for his loss.  *Lawrence v. M., L. S. & W. R'y Co.* 42 Wis. 322.

It has already been said that the plaintiff knew enough

of the effects of the storm to put him upon inquiry as to its effect upon the railroad fences. He made no such inquiry, but turned out his cattle where, if the fences were down, they would be very liable to go upon the railroad track, and left them to their fate. The case does not differ in principle from that of *Lawrence v. R'y Co. supra*, and the finding that the negligence of the plaintiff did not contribute to the loss of his cattle is negatived by the undisputed evidence.

The negligence of the plaintiff appeared by his own testimony. Hence the motion on behalf of the defendant, made when the plaintiff closed his proofs, that a nonsuit be ordered, should have been granted.

2. The only negligence imputed to the defendant company is that it failed to repair its fences within a reasonable time after they were blown down — or rather that a reasonable time for it to do so had elapsed before the cattle were injured. The jury found the defendant guilty of negligence in this respect. This finding is based mainly, if not entirely, upon two other special findings to the effect that there was sufficient material at hand with which the section foreman and his men might have repaired the fence; and that, excluding Sunday, there was sufficient time in which to make the repairs before the plaintiff's cattle were killed, had reasonable diligence in that behalf been exercised. The jury also found that the material thus at hand consisted of " lumber from fences blown down, and the tree that fell across the fence, and railroad ties."

The evidence shows that the tree mentioned in the verdict belonged to one Bowles, who owned the land on which it stood before it was blown down, and that the defendant had a quantity of old ties on its right of way in that vicinity, but no other material which could be used in repairing the fences.

The finding of the jury that the defendant was negligent

because it did not repair fences by Monday evening, is manifestly based upon the assumption that the defendant might lawfully have used material therefor standing or being upon lands contiguous to its right of way, and belonging to other parties. The plaintiff testified as follows: "I know it would not have taken more than two hours to have fixed it with brush and poles, because I know my cattle would not have gone over brush two feet high. It is a timber country, and plenty of poles and other fencing material right close by; nothing on the right of way except the old ties."

The case was not argued to the jury, but was submitted on the charge of the court. The charge contained nothing on the subject of the right of defendant to get timber or poles on land which it did not own.· At the close of the charge counsel for defendant called the attention of the court to the subject, and substantially asked an instruction to the effect that defendant had not that right. This is undoubtedly a correct legal proposition. *Stephenson v. Grand Trunk R'y Co.* 34 Mich. 323. The court declined so to instruct, not because the instruction asked was not good law, but because it was not proposed in time. The learned judge said: "I am not going to give any additional instructions. It is a rule which has been publicly announced a good many times, that I don't feel bound to consider instructions that are asked for after the argument has been commenced."

We think there may be circumstances in some cases which would render that rule a little too rigid. The course of argument by the opposing counsel, or the unexpected failure of the court to charge in a particular way, or to charge at all upon some branch of the case, might make it absolutely necessary for the safety of his client that counsel ask additional instructions, either at the close of the argument or of the charge, upon points which, earlier in the case, might not have seemed important, or which the court may have omitted to notice. The rule should be sufficiently elastic to allow

additional instructions to be asked for in such cases after argument and charge. This seems to be in the interest of justice and can work harm to no one. Under the circumstances of this case we think the rule should not have been enforced — especially as the cause was not argued — and that the proposed instruction should have been given. Had it been given, the jury might have found that the defendant was not guilty of negligence because of its failure to repair the fences earlier. Certainly the instruction, had it been given, would have had an important influence in the determination of that question, even if it should be held that the section foreman ought to have repaired the fences temporarily with the old ties. It does not appear that there were sufficient of these to repair all of the breaches in the fences. We are constrained to think that the refusal to give the instruction was error.

Before leaving the case it is proper to say of it, generally, that the law only charged the defendant company with the duty to repair its fences with ordinary diligence. Nothing appears in this case to show that its duty to repair one portion of it was any greater or different than was its duty to repair other portions. Neither does the testimony show any special exigency which rendered it the duty of the company to make temporary repairs of any part of the fence with the old railroad ties lying upon its right of way. It was entirely reasonable and proper for the company to keep its depot of materials at Tomah, and for its section foreman to wait until he received such materials from that place before he closed the gaps in the fences; that the foreman made his requisition for materials upon the proper officer or agent of the company, to wit, the road-master at Tomah, in due time; and that he repaired the fences within a reasonable time after the materials therefor reached Centralia is not denied. The only ground, we think, for imputing negligence to the company is the alleged failure of the road-master to ship such

material from Tomah as soon as he ought.   Nothing appears in the case — no special exigency was shown — which made it the duty of the road-master to ship the materials by any other than a regular freight train, or to employ men outside the usual hours of labor to load the same on the cars. If he made the shipment from Tomah on the first regular freight train going to Centralia, after he had time during the usual hours of labor on Monday to load the materials on the cars, he exercised reasonable diligence.   Whether he did so or not, is not made clear either by the proofs or the special verdict.

*By the Court.*— The judgment is reversed, and the cause will be remanded for a new trial.