## STATE *vs.* WILLIAM BARRY.

### Criminal Law—Insanity as Defense.

The appellant was charged with the crime of murder in the first degree, and to this charge entered a plea of not guilty. The defense of insanity was interposed, and at the trial a large amount of evidence was offered upon the question of appellant's sanity on the day of the homicide. One Mears, a nonexpert witness for the defense, testified, in substance, that he had known the appellant for some years, had transacted business with him, and had met him frequently; that he had seen appellant on the day of the homicide, and observed that he was talking, and walking about rubbing his hands, with his head down. The witness further testified, "I didn't notice anything peculiar or out of the ordinary in his appearance that day, more than I have stated, that he was rubbing his hands, and walking up and down." On this foundation the witness was asked whether he had formed an opinion as to the appellant's sanity or insanity on the day of the homicide. An objection was made to this question, which was sustained by the court. *Held,* that said ruling was not error.

### Opinion of Layman as to Insanity—Rule.

Upon an issue of insanity a layman may be required to express an opinion as a witness, but before doing so the facts developed must show his competency to testify. His opinion must rest upon a basis of fact, and the rule is that a nonexpert will not be allowed to express an opinion affirming insanity unless the facts developed indicate insanity, to some extent at least. The facts testified to by Mears did not indicate insanity, and hence he was not competent to express an affirmative opinion as to appellant's insanity.

### Opinion Evidence—Competency—Judicial Discretion.

*Held,* further, that no inflexible rule has been formulated by the courts which will exactly measure the amount of testimony required to show competency to give opinion evidence, and upon the preliminary question of competency the conclusion to be reached by the trial court is within the domain of sound judicial discretion, and such conclusion, therefore, will not be reversed on appeal except in cases of abuse.

### Charge to Jury—Expression of Judge's Views as to Weight and Effect o Evidence Prejudicial Error.

At the trial the state offered testimony in support of the charge as embodied in the information, and a portion of such testimony consisted of certain statements made by the appellant to the witnesses in the nature of confessions, and to the effect that he (the appellant) had killed the deceased. The appellant offered no evidence contradicting the witnesses for the state upon any feature of the charge as alleged in the information. The only testimony offered by the appellant related to the defense of insanity. Upon this state of the evidence the trial court, in the course of its charge to the jury, instructed them as follows: "With regard to the evidence in this case, there is very little comment required from the court, except upon one question; the others being hardly matters of dispute. That the defendant struck Andrew Mallem with a knife is abundantly proved, if you believe the testimony of the state in this case. That the wound caused his death has been testified to by the sur-

geons most competent to speak, and they are uncontradicted. That the homicide was committed with malice aforethought or premeditation, if the defendant was capable of criminal intent, the malice and premeditated design can hardly be gainsaid, if you will bear in mind what I have already stated, and if you believe the testimony of the state in this case; and in fact there is no denial made by the defendant of ever having committed the act. * * * Evidence has been submitted to you in this case by a number of witnesses showing that the defendant has admitted forming an idea to kill the deceased, and also that he did strike him on the neck with a knife, which wound was the cause of deceased's death; and the court instructs you as a matter of law that the admissions of the defendant are legal and competent evidence against him. Therefore, all these facts and admissions, if believed by you, come up to the full measure of proof required to establish what the law denominates 'premeditated design' and 'malice aforethought,' if the defendant was capable of forming an intent. And thus I apprehend that you will have little difficulty in reaching a conclusion as to all the elements that make up the crime charged in the information, unless it be one of 'sound memory and discretion,' as it is called, which is only another expression for a 'sound mind.' We now approach the serious and difficult question in the case." *Held,* that the language of the charge, as above quoted, gives clear expression to the views of the presiding judge upon the weight and effect of the evidence offered in behalf of the state, and hence the same is prejudicial error.

#### Charge—Prejudicial Parts not Cured.

In other protions of the charge the jury were instructed to the effect that the trial court desired to avoid giving expression to its views to the jury upon the weight of the evidence or upon the credibility of the testimony, and the jury was informed by the court that they were the exclusive judges of the credibility of the testimony and of the weight and effect of the evidence. *Held*, that such portions of the charge do not operate to cure the error involved in instructing the jury in the language of the charge which has been quoted.

#### Rule in Terr. v. O'Hare, 1 N. D. 30, Adhered to.

*Held*, further, construing statutes embraced .n the Code of Criminal Procedure (sections 8176 and 8217, Rev. Codes 1899), that the common-law rule which prevails in some of the states and in the federal courts, permitting trial courts in charging juries to give expression to their views upon the credibility of testimony, or its weight or effect, has been abrogated by statute in this state. The rule promulgated in Territory v. O'Hare, 44 N. W. Rep. 1003, 1 N. D. 30, is adhered to, and *held* to be in force under the existing statutes.

#### Verdict of Acquittal Cannot be set Aside, when.

The plea of not guilty puts in issue every essential element of the offense charged, and, until this issue is determined, the courts of this state are inhibited, under the statute, from instructing the jury that any essential fact is established; and this is true in a case where no evidence is offered to disprove the fact. The jury has the right to disbelieve and wholly reject the testimony of any witness, whether he is contradicted or not; and when this is done wrongfully the court is powerless, in a criminal case, to set aside a verdict of acquittal.

### Refusal to Give Instructions—When Error.

A proper request for instructions was delivered to the trial court after the charge had been read to the jury, but before the jury retired for deliberation. The trial court refused to give the instruction to the jury, and based its refusal—First, upon the ground that the request was presented too late; and, second, upon the ground that the instruction has been substantially covered by the charge as given to the jury. *Held*, that it was error to refuse the request upon the ground that it was presented too late. Whether the request was covered by the charge is not considered in the opinion, and hence the question whether the refusal to give the request was prejudicial error is not determined.

### Insanity as a Legal Defense not to be Disparaged.

As to the defense of insanity, the court charges as follows: "The defense of insanity has been so abused as to be brought into great discredit. It has been the last resort in cases of unquestionable guilt, and has been an excuse to juries for acquittal, when their own and the public sympathy have been with the accused, especially when the provocation to homicide has excused it according to public sentiment, but not according to law. For that reason it is viewed with suspicion and disfavor whenever public sentiment is hostile to the accused. Nevertheless, if insanity be established to a degree that has already in part and will hereafter be further explained, it is a perfect defense to the information for murder, and must be allowed due and full weight and consideration." *Held*, that said instruction to the jury is error. The defense of insanity is a legal defense, and hence it should not be disparaged, or placed under the ban of disapproval by the court.

Appeal from District Court, Cavalier County; *Kneeshaw*, J.

William Barry was convicted of murder, and appeals. Reversed.

*Tracy R. Bangs*, for appellant.

Clarence Mears had known Barry since 1892. Had business relations with him in 1898 and 1899. Saw him frequently since 1898, and had talked with him. Saw him on January 3rd, and recounted his observations to the jury. It was error to exclude his opinion as to defendant's sanity. *Bolling* v. *State*, 16 S. W. Rep. 658; *Jamieson* v. *Peo.*, 34 N. E. Rep. 486; *Peo.* v. *Sanford*, 43 Cal. 29; *Peo.* v. *Wredden*, 59 Cal. 392; *Peo.* v. *Lewis*, 22 Pac. Rep. 241. In his instruction the court read to the jury § 6814, Rev. Codes, describing persons incapable of crime, and omitted to read in that section Subd. 6 thereof, as follows: "Persons who commit an act or make an omission, otherwise criminal or punishable, without being conscious thereof." At the close of the case the court's attention was called to this omission by a request that he charge the jury in the following language: "If you find that the defendant was not conscious of the act which resulted in the death of Andrew Mallem, you must acquit the defendant." This request was refused because not presented in time, and as substantially covered by the general charge. § 6814, Rev. Codes. The court erred in charging the jury as a matter of law "that if you believe the evidence of the prosecution as to the killing, that the defendant is guilty of murder as charged in the in-

formation or he is innocent of any crime." *Kearney* v. *Cooper,* 17
Pac. Rep. 782; *Peo.* v. *Webster,* 39 Hun. 398, 13 N. Y. Supp. 414.
The charge should be free from intimating any opinion as to the
weight of the evidence. *State* v. *Whitney,* 7 Ore. 386; *Benedict* v.
*State,* 14 Wis. 424; *Snyder* v. *State,* 59 Ind. 105; *State* v. *Bidge,* 84
N. W. Rep. 518; *Peo.* v. *Lington,* 32 Hun. 461; *Peo.* v. *Cogwill,* 29
Pac. Rep. 228; *Stokes* v. *Peo.,* 53 N. Y. 164; *McKenna* v. *Peo.,* 81
N. Y. 360; *Rice* v. *State,* 3 Tex. App. 451; *Peo.* v. *Johnson,* 39 Pac.
Rep. 622; 14 Cent. Dig. § 1732. The court erred in instructing the
jury that "in this case there is very little comment required from
the court except upon one question, the others being hardly matters
of dispute. That the defendant struck Mallem is abundantly proved,
if you believe the testimony of the state in this case. That the
wound caused his death has been testified to by the surgeons most
competent to speak, and they are uncontradicted." §§ 8176, 8217,
Rev. Codes; *State* v. *Asbury,* 37 La. Ann. 124; 14 Cent. Dig. § 1731;
*Peo.* v. *Dick,* 34 Cal. 663; *Peo.* v. *Roberts,* 55 Pac. Rep. 137; *State*
v. *Lightfoot,* 78 N. W. Rep. 41; *State* v. *Whitney,* 7 Ore. 386; *Peo.*
v. *Lee,* 15 Pac. Rep. 322; *State* v. *Porter,* 38 N. W. Rep. 514; *State*
v. *Hecox,* 83 Mo. 531; *State* v *.Austin,* 80 N. W. Rep. 303; *State* v.
*Mackey,* 6 Pac. Rep. 648; *Ty.* v. *Kay,* 21 Pac. Rep. 152. The court's
instruction that a number of witnesses testified that defendant had
admitted forming an idea to kill the deceased, and that he struck him
on the neck with a knife—causing his death—was also erroneous
as expressing an opinion as to the weight of evidence. *Snyder* v.
*State,* 59 Ind. 105; *Brewster* v. *State,* 63 Ga. 639; *Peo.* v. *Kindle-
berger,* 34 Pac. Rep. 852; Thomp. Tr. § 2330. It was also erroneous
as singling out certain evidence, and ignoring other evidence of
equal importance. *Logg* v. *State,* 92 Ill. 598; *Hoge* v. *Peo.,* 6 N. E.
Rep. 796; *Williams* v. *State,* 65 N. W. Rep. 783; *Peo.* v. *Clark,* 62
N. W. Rep. 1117. The court erred in instructing the jury that the
defense of insanity has been abused and brought into discredit as the
last resort in cases of unquestionable guilt, and that it has been an
excuse to juries for acquittal when their own and public sympathy
have been with the accused, especially when the provocation to homi-
cide has excused it according to public sentiment. This language
was calculated to prejudice the jury against the defense of insanity.
It was an expression of opinion that the defendant was guilty and
had resorted to an unwarranted defense. *Simmons* v. *State,* 62 Miss.
243; *Dawson* v. *State,* 62 Miss. 241; 14 Cent. Dig., § 1837; *Spencer*
v. *State,* 50 Ala. 124; *Peo.* v. *Kelly,* 35 Hun. 295; *Walker* v. *State,*
37 Tex. 366; *Albin* v. *State,* 63 Ind. 598, 14 Am. St. Rep. 43, and
note; *Assam* v. *State,* 23 N. E. Rep. 123. An instruction that as-
sumes the exitsence of a fact which should be left to the jury for
ascertainment, is erroneous, and is not cured by a general instruction
that the jury are the exclusive judges of all questions of fact, and
that the burden was on the state to establish the allegations of the
indictment beyond a reasonable doubt. *State* v. *Hatcher,* 44 Pac.

Rep. 584; *Belt* v. *Peo.*, 125 Ill. 584; *Cannon* v. *Peo.*, 30 N. E. Rep. 1030. The court erred in instructing the jury that "while the accused party cannot make evidence for himself by his subsequent declarations, on the other hand he may make evidence against himself, and when these declarations amount to admissions against himself, they are evidence to be considered by the jury." 1 Greelf. Ev., § 201; *State* v. *Laliyer*, 4 Minn., 281; *State* v. *Young*, 24 S. W. Rep. 1038; *Blackburn* v. *State*, 23 O. St. 146; *State* v. *Martin*, 28 Mo. 530; *State* v. *Brooks*, 12 S. W. Rep. 633; *State* v. *Brown*, 16 S. W. Rep. 406; *Jones* v. *State*, 25 Am. St. Rep. 715; *Peo.* v. *Strong*, 30 Cal. 151; *Griswold* v. *State*, 24 Wis. 144; Wharton's Crim. Ev., § 688. To single out a party and discredit his testimony, to place him upon a different plane from that of other witnesses, to tell the jury, as was done in this case, that the testimony of the defendant should not be weighed by them, except by short measure, was unfair to the defendant and prejudicial to his rights. *Unruh* v. *State*, 105 Ind. 117; *Hicks* v. *U. S.*, 150 U. S. 442; *Peo.* v. *Pearsall*, 15 N. W. Rep. 98; *State* v. *White*, 39 Pac. Rep. 160; *State* v. *Nordstrom*, 7 Wash. 506; *Harris* v. *Peo.*, 82 Ill. 430; *Peo.* v. *Van Eman*, 45 Pac. Rep. 522; *State* v. *Hoy*, 86 N. W. Rep. 98; *Ty* v. *O'Hara*, 1 N. D. 30. The court erred in instructing the jury "that no verdict could safely be rendered upon the evidence of the accused party only, under such circumstances. If it were recognized, by such a verdict, that a man on trial for his life could secure an acquittal by simply testifying himself that he had committed the crime charged under a delusion, an inspiration, an irresistible impulse, this would be to proclaim an universal amnesty to criminals in the past, and an unbounded license for the future, and the courts of justice might as well be closed." *Greer* v. *State*, 53 Ind. 420; *State* v. *Bird*, 8 N. E. Rep. 14; *Buckley* v. *State*, 62 Miss. 705; *State* v. *Johnson*, 16 Nev. 36; *State* v. *Holloway*, 23 S. E.. Rep. 168; *Ryder* v. *Peo.*, 110 Ill. 11; *Newman* v. *Peo.*, 63 Barb. 630; *Com.* v. *Pipes*, 27 Atl. Rep. 839. Defendant's request for an instruction to the jury "that if the defendant was not conscious of the act, he should be acquitted," was not too late but in proper time. *Preston* v. *State*, 26 So. Rep. 736; *Peo.* v. *Demasters*, 39 Pac. Rep. 35; *Brooks* v. *State*, 23 S. E. Rep. 413; *Peo.* v. *Garbutt*, 17 Mich. 9.

*W. B. Dickson*, State's Attorney (*Cochrane & Corliss*, of counsel) for respondent.

The witness Clarence Mears did not show himself qualified to give a non-expert opinion. He had a speaking acquaintance with defendant, only; didn't see anything particular or out of the ordinary in his appearance on January 3rd, except that he was rubbing his hands and walking up and down with his head down. Rog. Exp. Test. 8; *First Nat. Bank* v. *Wirebach*, 106 Pa. St. 37; *Peo.* v. *Levy*, 12 Pac. Rep. 791; *State* v. *Crisp*, 29 S. W. Rep. 172; *O'Connor* v. *Madison*, 57 N. W. Rep. 107; *State* v. *Gaddis*, 42 Ia. 268; *Shaver* v. *McCarthy*, 5 Atl. Rep. 614. To warrant an opinion as to sanity or insanity by

a non-expert witness, some knowledge of the acts and conduct of the person whose sanity is questioned must appear. The facts stated should show a rational ground for an opinion, and show that the witness is qualified to give it. *State* v. *Brooks,* 4 Wash. 328; *Prentiss* v. *Bates,* 17 L. R. A. 494; *Yanke* v. *State,* 51 Wis. 464; *Woodcock* v. *Johnson,* 36 Minn. 217; *Foster* v. *Dickerson,* 64 Vt. 233. The determination of the competency of this witness to give an opinion was within the discretionary power of the court. 1 Clevenger Med. Jur. 576; *Peo.* v. *Levy,* 12 Pac. Rep. 794; *Peo.* v. *Pico,* 62 Cal. 53; *Colle* v. *State,* 75 Ind. 513; *Denning* v. *Butcher,* 59 N. W. Rep. 569; *Boorman* v. *Ass'n.,* 62 N. W. Rep. 934. It was not error to receive the opinion of John L. Robertson, the sheriff who made the arrest. *Bolling* v. *State,* 16 S. W. Rep. 661; *Peo.* v. *Borgetto,* 58 N. W. Rep. 328. The omission of the words "without being conscious thereof," when the court read § 6814, Rev. Codes, to the jury, was clearly an inadvertence. His attention not having been called to it by an exception made at the time, and no request made upon the court to re-read the section or correct his omission, the error was waived. *Peo.* v. *Kernagham,* 14 Pac. Rep. 568; *Benton* v. *State,* 30 Ark. 335; *Carroll* v. *State,* 45 Ark. 548; *West* v. *Ty.,* 36 Pac. Rep. 207; *Peo.* v. *Olson,* 22 Pac. Rep. 125; *Peo.* v. *Barney,* 47 Pac. Rep. 41; *State* v. *Smith,* 31 Atl. Rep. 206; *State* v. *Potter,* 15 Kan. 311; 8 Enc. Pl. & Pr. 266, 288; 11 Enc. Pl. & Pr. 217; *Paulson* v. *Peo.,* 63 N. E. Rep. 144; *State* v. *Montgomery,* 9 N. D. 409; *Peo.* v. *Hamm,* 44 Cal. 100; *Mason* v. *Peo.,* 2 Colo. 373; *Lewis* v. *State,* 16 S. E. Rep. 986; *Barnett* v. *State,* 100 Ind. 177; § 8176, Rev. Codes. Defendant's request for an instruction that if he was not conscious of the act which resulted in Mallem's death, he was entitled to an acquittal, having been presented to the judge too late, as shown by the bill of exceptions, was the same as if not presented at all. *U. S.* v. *Gilbert,* 25 Fed. Cas. 1287; *Grubb* v. *State,* 20 N. E. Rep. 257; *Benson* v. *State,* 21 N. E. Rep. 1109; *State* v. *Rowe,* 4 S. E. Rep. 506. And this feature of the law was fully and fairly covered by the court's general-charge, hence no error could result to appellant by the omission. *State* v. *McGahey,* 3 N. D. 293; *Dealey* v. *Elev. Co.,* 4 N. D. 269; *State* v. *Kent,* 5 N. D. 516; *State* v. *Campbell,* 7 N. D. 63. The court's instruction that if the evidence was believed that the defendant was guilty of murder, or innocent of any crime, could not be prejudicial, because there was no evidence in the case making an instruction as to the lower degrees of murder or manslaughter necessary. Kerr on Homicide, § 526; *State* v. *Kronstett,* 61 Pac. Rep. 805; *Peo.* v. *Estrado,* 49 Cal. 171; *Teal* v. *State,* 68 Am. Dec. 482; *State* v. *Downs,* 3 S. W. Rep. 319; *Peo.* v. *Littlejohn,* 11 S. E. Rep. 639; *State* v. *Rose,* 4 S. W. Rep. 734; *Love* v. *State,* 11 Tex. App. 502; *State* v. *Mears,* 66 Mo. 13; *Lewis* v. *State,* 15 S. E. Rep. 697; *Ragland* v. *State,* 27 So. Rep. 987; *Jackson* v. *State,* 15 S. E. Rep. 677; *Sanders* v. *State,* 38 S. E. Rep. 841; *Gardner* v.

*State,* 17 S. E. Rep. 86; *Rockmore* v. *State,* 19 S. E. Rep. 32; *Peo.* v. *Lee Gam,* 11 Pac. Rep. 183; *State* v. *Parigo,* 45 N. W. Rep. 399; *Strong* v. *State,* 88 N. W. Rep. 772. The instruction challenged under this assignment is in the same language as in the Guiteau case. *U. S.* v. *Guiteau,* 10 Fed. Rep. 163; 3 Guiteau's Tr., 2607, 2331, 2569; *Teal* v. *State,* 68 Am. Dec. 482; *State* v. *Hall,* 68 S. W. Rep. 344; *Peo.* v. *DeGarmo; 76* N. Y. Supp. 477; *State* v. *Cole,* 63 Ia. 700; *State* v. *Jones,* 64 Mo. 392; *Peo.* v. *King,* 25 Cal. 507; *Jackson* v. *State,* 15 S. E. Rep. 677; *Peo.* v. *Cannon,* 139 N. Y. 645. Appellant's tenth, eleventh and twelfth assignments of error are directed to expressions of opinion by the court as to the weight of the evidence. The instructions excepted to were taken literally from the Guiteau case. *U. S.* v. *Guiteau,* 10 Fed. Rep. 163. The sole issue in the case was upon the question of defendant's insanity. The defendant became a witness in his own behalf, but did not deny the killing or any circumstances proven by the state, connected therewith. He produced no evidence in contradiction of any of the circumstances proven by the state. He admitted a dream-like memory, of the killing, and said that Mallem would forgive him if they could meet. The defendant having failed to deny material facts testified against him, the inference was as adverse as against a party to a civil action. *State* v. *Anderson,* 1 S. W. Rep. 141; *Anderson* v. *State,* 4 N. E. Rep. 63; *Stover* v. *Peo.,* 56 N. Y. 315; *Peo.* v. *O'Brien,* 6 Pac. Rep. 695; *State* v. *Witham,* 72 Me. 533. Where there is and can be no other deduction from the evidence than the one stated by the court, the rights of the defendant are not prejudiced by such instructions as were here given. *Sawson* v. *State,* 33 Tex. 496; *Beers* v. *Ry. Co.,* 19 Conn. 566; *State* v. *Smith,* 49 Conn. 388; *Beurmann* v. *Van Buren,* 44 Mich. 496; *Peo.* v. *Carey,* 84 N. W. Rep. 1087; *Gregg* v. *Mallet,* 15 S. E. Rep. 937; *State* v. *Fountain,* 81 N. W. Rep. 162; *State* v. *Huff,* 40 N. W. Rep. 720. The court repeatedly instructed the jury that it was their province and not the province of the court to decide the facts; that if at any time he seemed to express an opinion on the facts, that it was not binding upon the jury, saying: "I want to particularly reiterate here that while I have stated and commented upon a part of the evidence in the case, if I at any time seem to express any opinion upon it, which I did not, or do not design to do, you are the sole and exclusive judges of all such facts, and the weight of the evidence and credibility of the witness, and you must draw your own conclusions from the evidence. You are the sole and exclusive judges of all questions of fact arising in the case. Your verdict must be arrived at from a consideration only of the evidence." In the light of this caution to the jury the expressions would be deemed advisory only, and not prejudicial. § 8217, Rev. Codes; 11 Enc. Pl. & Pr. 91; *Peo.* v. *Cannon,* 139 N Y. 645; *Johnson* v. *Com.,* 85 Pa. St. 54; *State* v. *Meshek,.* 61 Ia. 316; *Peo.* v. *Zachello,* 60 N. E. Rep. 1051; *Peo.* v. *Hawkins,* 64 N. W. Rep. 739; *Peo.* v. *Warren,* 81 N. W. Rep. ·

360; *State* v. *Fountain,* 81 N. W. Rep. 162; *State* v. *Riley,* 18 S. E. Rep. 168; *State* v. *Burton,* 18 S. E. Rep. 657; *State* v. *McIntosh,* 13 S. E. Rep. 1033; *State* v. *McLean,* 10 S. E. Rep. 518; *Taylor* v. *State,* 24 So. Rep. 689; *State* v. *Mitchell,* 6 So. Rep. 785; *Duffy* v. *Peo.,* 5 Parker's Crim. Rep. 321; *Hemmingway* v. *State,* 8 So. Rep. 317; *Peo.* v. *Carey,* 84 N. W. Rep. 1087; *State* v. *Rose,* 47 Minn. 47; *Peo.* v. *Johnson,* 38 Pac. Rep. 91; *Peo.* v. *Speigel,* 28 N. Y. Supp. 1040, 38 N. E. Rep. 284. Our statute permits the court to sum up the evidence, and was passed in the light of the foregoing cases, the rule of which it establishes for this state. § 8217, Rev. Codes; *Com.* v. *Dougherty,* 21 Atl. Rep. 228; 11 Enc. Pl. & Pr. 195, and note. In some jurisdictions where the evidence for the state was unchallenged, as in this case, it is permissible for the court to advise conviction. *Taylor* v. *State,* 25 So. Rep. 689; *Peo.* v. *Richmond,* 26 N. E. Rep. 770; *Peo.* v. *Ackerman,* 45 N. W. Rep. 367; *Peo.* v. *Warren,* 81 N. W. Rep. 361; *Peo.* v. *Neumann,* 48 N. W. Rep. 291. It was error for the court to instruct the jury to the effect that if they believed the testimony for the state, the homicide was committed with malice aforethought, providing defendant was capable of criminal intent; and that there was no denial made by the defendant of having committed the act. *Wooten* v. *State,* 5 So. Rep. 39, 1 L. R. A. 819; *U. S.* v. *Guiteau,* 10 Fed. Rep. 163; *State* v. *McLean,* 10 S. E. Rep. 518; *Ettinger* v. *Com.,* 98 Pa. St. 338; *Peo.* v. *Hawkins,* 64 N. W. Rep. 739; *State* v. *Walker,* 78 Mo. 380; *State* v. *Cleaves,* 8 Am. Rep. 422; *State* v. *Anderson,* 1 S. W. Rep. 141; *Stover* v. *Peo.,* 56 N. Y. 315; *Bogland* v. *State,* 27 So. Rep. 983; *Com.* v. *Eckerd,* 34 Atl. Rep. 306. Malice is presumed from the killing, and it was proper for the court to so charge. *Peo.* v. *Kernagham,* 14 Pac. Rep. 568; *Lewis* v. *State,* 15 S. E. Rep. 697; *Butler* v. *State,* 19 S. E. Rep. 51; *Cathcart* v. *Com.,* 37 Pa. St. 112; *Vance* v. *State,* 9 S. E. Rep. 945; *Com.* v. *Drum,* 58 Pa. St. 17; *Dorsey* v. *State,* 35 S. E. Rep. 651. The cases cited by appellant to the point that a grouping of the facts on one side is prejudicial are all cases where there was a conflict of evidence. It is apparent that no objection can arise to a grouping of facts where there is no dispute or conflict as to the facts stated. *Beers* v. *Ry. Co.,* 19 Conn. 570; *Keyes* v. *Fuller,* 9 Ill. App. 528; *Peo.* v. *King,* 27 Cal. 513; *Peo.* v. *Dick,* 34 Cal. 663; *Peo.* v. *Burns,* 30 Cal. 207; *State* v. *Garrand,* 5 Ore. 220; *State* v. *Whitney,* 7 Ore. 393; 10 Enc. Pl. & Pr. 168. The right to state the evidence includes the right to state that there is no evidence as to particular facts. *Peo.* v. *Dick,* 34 Cal. 663; *Driskill* v. *State,* 7 Ind. 338; *Barker* v. *State,* 48 Ind. 167; *Peo.* v. *Fanning,* 131 N. Y. 665; *Whiting* v. *State,* 27 N. E. Rep. 99; *State* v. *Moorman,* 2 S. E. Rep. 621; *Lovejoy* v. *U. S.,* 128 U. S. 171. It is not proper ground for exception that the court stated a part of the testimony on a certain point without stating all. *Allis* v. *U. S.,* 15 Sup. Ct. Rep. 38; *Howell* v. *Peo.,* 5 Hun. 620, 69 N. Y. 607; *U. S.* v. *Babcock,* 24 Fed. Cas. 14486; *Brown* v. *Com.,* 78 Pa. St. 122. The giving of an argu-

mentative instruction cannot constitute reversible error in such a case, because the jury cannot be misled by it. *McQueen* v. *State,* 10 So. Rep. 433; *Peo.* v. *Fenwick,* 45 Cal. 287; *Peo.* v. *Donahue,* 45 Cal. 321; *Mackey* v. *Peo.,* 2 Colo. 13; *Pascal* v. *State,* 3 S. E. Rep. 2; *Case* v. *State,* 17 So. Rep. 379; *State* v. *Brooks,* 30 Pac. Rep. 147; *Edelhoff* v. *State,* 36 Pac. Rep. 627. The assignment as to the court's instruction as to the abuse of the defense of insanity is not well taken. *U. S.* v. *Guiteau,* 10 Fed. Rep. 163, 3 Crim. L. Magazine, 347; *Sawyer* v. *State,* 35 Ind. 86; *Sanders* v. *State,* 84 Ind. 148; *Butler* v. *State,* 97 Ind. 388; *Peo.* v. *Kernagham,* 14 Pac. Rep. 568; *Com.* v. *Webster,* 5 Cush. 295; *McKee* v. *Peo.,* 36 N. Y. 113; *Peo.* v. *Dennis,* 39 Cal. 625; *Peo.* v. *Bumberger,* 45 Cal. 650; *State* v. *Richards,* 39 Conn. 595. The court's instruction to the jury to satisfy themselves about the condition of the prisoner's mind for a considerable period of time before the conception of the homicide entered into it, was not prejudicial, because the defendant testified on the trial that when his sister confessed to him, it worked on his passions and he made up his mind to kill Mallem; that after thinking the matter over all night he decided to kill him. In view of this testimony, and there being no contradiction of the facts assumed, excepting by the mere plea of "not guilty," no error could result. *Peo.* v. *McDowell,* 3 Pac. Rep. 724; *State* v. *Grayor,* 16 Mo. App. 558, 1 S. W. Rep. 365; *Kline* v. *State,* 10 S. W. Rep. 225; *Peo.* v. *Phillips,* 11 Pac. Rep. 493; *Peo.* v. *Lee,* 14 Pac. Rep. 310; *Davis* v. *Peo.,* 24 N. E. Rep. 192; *Smith* v. *State,* 28 Ind. 321; *Brewer* v. *Com.,* 12 S. W. Rep. 672; *Wesley* v. *State,* 75 Am. Dec. 62; *Hill* v. *State,* 60 N. W. Rep. 916; *State* v. *Douglas,* 28 W. Va. 297; *State* v. *Herold,* 9 Kan. 194. Appellant cannot predicate error upon any of the instructions which assumed that Mallem was killed by accused, because, by the requests for instructions presented by appellant to the court, the court was asked to assume this fact. Having invited this construction of the evidence, he cannot complain of it now. *Com.* v. *Lawless,* 103 Mass. 425; *Com.* v. *Brigham,* 123 Mass. 248; *Peo.* v. *Lopez,* 59 Cal. 362; *Com.* v. *Locke,* 114 Mass. 288; *Peo.* v. *Biggins,* 3 Pac. Rep. 853; *Tuller* v. *State,* 8 Tex. App. 501; *Hudson* v. *State,* 13 S. W. Rep. 388.

WALLIN, C. J. The appellant is charged with the offense of killing one Andrew Mallem, with malice aforethought and premeditation, in the county of Cavalier, on the 3d day of January, 1901. After pleading not guilty, the defendant was tried by a jury, and found guilty of the offense charged in the information, and as a penalty the jury directed that the defendant should be confined in the state penitentiary during the remainder of his life. Defendant is now confined in the penitentiary upon a sentence entered by the district court pursuant to the verdict. The trial commenced on July 16, 1901. In this court counsel claim that the defendant should be awarded a new trial upon the ground that prejudicial error occurred in the case during the proceedings in the district court. Appellant's counsel does not ask for a review of the evidence, or claim that the verdict returned by the

jury is not justified by the evidence offered at the trial, but does claim that numerous errors of law occurred during the trial, to which exceptions were saved by the defendant. A large number of errors are assigned upon the instructions which were given to the jury by the trial court, and some are predicated upon instructions requested in behalf of the defendant, and which were refused by the trial court. Error is also assigned upon certain rulings made upon the admission of the testimony in the case.

A proper consideration of the errors alleged requires that a preliminary statement should be made of the more important facts of the case as, disclosed by the record. Many very important facts are uncontroverted, and there is a mass of evidence in the record which is not attempted to be contradicted, and counsel on both sides have presented in their briefs a succinct statement of the facts of the case which are not contested, and these statements do not differ, except in details which are relatively unimportant. The uncontroverted facts, as gathered from the record, may be stated as follows: On January 3, 1901, the defendant, who is a farmer, was residing on his farm, which was situated within a few miles from the village of Milton, in Cavalier county. Defendant was a bachelor, and at the time in question his family consisted only of himself, an unmarried sister, Mary Ann Barry, and the deceased, Andrew Mallem. A neighbor, one John Wild, lived about three-quarters of a mile distant from the defendant's residence. It is undisputed that parties residing at Milton, after hearing certain statements in the nature of confessions made by the defendant at Milton on January 3, 1901, visited the defendant's farm on that day, arriving there about noon. These parties went to defendant's barn, and there, behind a horse called "Joe," they found the dead body of Andrew Mallem. The body was still warm. There was a rope around the neck of the body, one end of which extended downward in front, and then, after passing between the legs, extended out behind the body. There was blood on the rope and on the floor near the body. A wound about one inch wide at the surface was found on the right side of the neck of the deceased. This wound penetrated to a considerable depth, and the post-mortem held later showed that the carotid artery and the jugular vein were both severed, and it appears that the wound was necessarily a mortal wound. The evidence shows that all the inmates of the Barry home, including the deceased, were at the house in the morning of the day in question, and that shortly after 9 o'clock a. m. of that day defendant started from home, taking his sister with him, and that he drove his own team; and that the defendant then drove to Milton, arriving there about 10 o'clock a. m. What was said and done by the defendant during this drive to Milton and after his arrival there are facts of very great importance in their bearing upon the controlling questions in this case, but the evidence upon which these facts rest, except in minor particulars, is not at all conflicting. We find a succinct narrative of these facts in the brief of counsel for the respondent, and one

which we find to be fully sustained by the evidence. For purposes of convenience we here present an extract from said narrative: "On the morning of January 3, 1901, the defendant harnessed and hitched his team; put a fur coat and cap on his sister; changed his own clothes, putting on a clean new suit and a coonskin overcoat. He drove up to the house of one John Wild, a neighboring farmer, accompanied by his sister, Mary Ann Barry. Her hands and ears were frozen. Defendant asked to have his sister cared for, stating that she had been out that morning, and got her fingers frozen; that he was going to town to get the doctor, and would send him out at once; that he had news to tell; that he had killed his man that morning. He borrowed a pair of mittens, and drove to Milton, arriving there at about 10 o'clock a. m. He stopped in front of a livery barn; asked an acquaintance to hold his team; said he wanted to see Norgard, who was standing across the street. He approached Norgard, who was a justice of the peace, and inquired: 'Are you a justice of the peace?' Receiving an affirmative answer, he stated that he wanted to give himself up; that he had murdered a man, Andrew Mallem, that morning, and had come in to give himself up; that he was not joking; that he gave Mallem five minutes to pray; Mallem said: 'God have mercy on me!' He then stuck him with a knife, and that he died in two minutes. He indicated where he had stuck Mallem, pointing with his finger to the right side of the neck at a point about an inch below the angle of the jaw. Said that he tried to hang him with a rope, but couldn't, so finished him with a knife. That Mallem fought him like a hero when he tried to hang him. That Mallem punched him in the stomach, and knocked his wind out. That he killed him a few minutes past 9 o'clock that morning. Defendant then started toward the telephone, saying that he was not going to escape, but was going to telephone; that he wanted to send the doctor out to examine his sister; that Mallem had ruined her, and, if she was not in the condition he claimed, he wanted to be hung to a telegraph pole. He exhibited a jackknife, saying, 'This is what I did it with'; and, upon his attention being called to the lack of blood on the blade, stated that he had washed the knife. When asked his reason for the deed, he stated that the preceding night his sister confessed to him that Mallem had raped her three years before, and that lately he had been taking liberties with her person, and that this had worked on her passions so that she jumped out of her mind; that when she made the confession to him it so worked on his passions that he couldn't control himself, and, after thinking the matter over all night, he decided to kill Mallem; that on this morning he went down to the barn, caught Mallem behind the 'Joe' horse, told him he was going to kill him, gave him a choice to die by the rope or by the knife; that Mallem said, if he had to die, he didn't have any choice. Defendant then tried to hang him; found that he couldn't, so he gave him five minutes in which to pray. Mallem said, 'God have mercy!' and he finished him with the knife. Within a few minutes after arriving in Milton, defendant met one Allan McDonald, deputy sheriff,

and an old acquaintance. Upon being saluted by McDonald, defendant replied, 'Yes, Mac, I am in your charge,' and went in the custody of the sheriff to the telephone station, where he asked to have the county coroner, residing at Langdon, notified; also Mr. Dickson, the state's attorney. He then requested that Andrew Morken, a cousin of deceased, residing at Osnabrock, be advised, so that he could take charge of the remains; telephoned for a messenger to go to the country and get his brother, Tom, to go out and care for his stock; and also to go after Mrs. Dick Barry, a sister-in-law, with a request that she repair to John Wild's, where he had left Mary Ann, to care for her."

As bearing upon the defendant's mental condition at the time these statements in the nature of confessions were made by him on the 3d of January, his counsel calls attention to certain discrepancies in such statements. Upon this point we quote from the brief of appellant's counsel: "Some one asked if he was sure Mallem was dead, when the defendant replied: 'Yes, I stayed with him until he died. He died in two minutes.' He then related the claimed confession of his sister as to. Mallem's conduct with her. Again, while in the same store, he told that his sister had made a confession to him the night before, had then lost her mind, and gone out on the prairie, where she remained all night. That he found her in the morning, took her over to Jack Wild's, and drove back home, found Mallem in the barn, couldn't control himself, and killed him. As showing the different stories told by Barry, take the testimony of T. W. Cocks, on cross-examination. He said: 'Barry told the story in different ways. He told me, when I went in first, that he had taken his sister over to Wild's, and when he came back he found the man in the barn, and killed him. Then he told some other parties in there that he had taken his sister in the house when he found her hands and feet were frozen, and then went out and killed him. And then he told somebody else that he had made up his mind to kill him three or four days before. These were all told in my presence during the one visit to the drug store. He told me that Mallem said, 'Lord help me!' two or three times, and in his story to Mr. Helgesen he said, 'God have mercy on me!' The Rev. Sykes heard Barry talking that forenoon, and heard him say, 'It is an awful thing, an awful thing; but I couldn't help it, but I couldn't help it.' "

The defense of insanity was interposed, and at the trial the defendant's mental condition on January 3, 1901, was a subject of special inquiry, and a very large amount of testimony was offered upon this question. The defendant testified in the case, and stated, in substance, that he had only a dream-like recollection of the events that occurred on the day of the homicide, and had no recollection whatever of driving to the house of John Wild, or of leaving his sister there; and further testified that he had no recollection of seeing or conversing with the various parties with whom he undoubtedly conversed at Milton, and to whom he gave the details of the homicide. Defendant

further stated, regarding his mental condition, that he began to grow better in the following month of April, but did not fully regain his mental control until the month of May next after the homicide. Referring to the morning of the homicide, defendant testified that his sister—who, according to defendant's testimony, was then insane—ran out of the house a second time. He said: "She went away the second time, and I didn't know where I found her. Q. What next took place? A. I don't remember anything more that took place that day. I don't remember seeing Mallem after that. Don't remember having any fight with Mallem, or killing him. I have heard the witnesses testify, but I can't remember what was done. I have tried to remember, and it seems a dream to me. * * * When put in jail, I thought somebody was giving me stuff to drive me out of my mind. Thought it was in my victuals, and wouldn't eat." At the trial a great amount of testimony was offered tending to establish the fact of insanity in the defendant's family. This evidence was not met by countervailing testimony, and it shows that many of his relatives, including brothers, sisters, uncles, nephews, and other relatives, were at times insane, and some of them had been confined at different times in hospitals for the insane. There is also testimony which is undisputed tending to show that some of the defendant's relatives had been afflicted with epilepsy; and there was some evidence, coming from his relatives, that the defendant himself on a few occasions had experienced symptoms of something like epilepsy, but for a number of years prior to the date of the homicide no very marked symptoms of the disease were manifested by the defendant. He was a man of large physical frame, and had been successful as a farmer, and at the time of his arrest was in the possession of considerable means, which had been accumulated by his own energies and business judgment. The opinion evidence in the case touching the question of defendant's mental condition at the time of the homicide is voluminous, and the same was given by both professional and nonprofessional witnesses. Numerous non-experts were sworn, and were allowed to give their opinions as to the sanity of the accused on the day of the homicide. A number of nonexperts who testified in behalf of the defendant stated that, in their opinion, the defendant was out of his mind, or insane, at the time in question. Before giving opinions, such witnesses were examined as to their competency, and testified as to their acquaintance and relations with the accused, how long and intimately they had known him, and whether the witness on the day of the homicide particularly noticed the conversation and demeanor of the accused, and as to what he said and how he acted on that day.

The first error assigned arose upon the examination of Clarence Mears, a nonexpert witness, sworn for the defense, who, after testifying, in substance, that he knew the defendant in 1892, and that after an absence of some years he had met defendant, and had business relations with him in 1898 and 1899, and after that had a speaking acquaintance with the defendant, and met him frequently, and saw

him on the day of the homicide, testified as follows: That he "heard him make a statement, but whether I could give it word for word I couldn't say. It was to the effect that he couldn't come to any other conclusion. Heard him say things on that day that I don't now remember. When I saw him, he was walking up and down, and rubbing his hands. It was at the time that he was walking up and down that he was talking. He wasn't talking to any one in particular. The reason I didn't understand what he was saying was that I didn't catch what he said; that was all. I didn't notice anything peculiar or out of the ordinary in his appearance that day, more than I have stated that he was rubbing his hands and walking up and down; had his head down." At the conclusion of this statement the defendant's counsel asked the witness the following question: "From the facts and circumstances, the conversations and statements made by Mr. Barry, and your observation and acquaintance with him, as you have detailed, before and on the 3d day of January, and basing your opinion upon that, did you, on that day, form an opinion as to his sanity or insanity?" to which counsel for the state objected as follows: "We object to the question, as incompetent under the law under the answers of the witness, that he has not a sufficient, or that he has not an acquaintance with sufficient, facts to entitle him to express an opinion," which objection was sustaied by the court. In support of this objection defendant's counsel claims that this ruling was erroneous for the reason that the preliminary examination of the witness showed that the witness had qualified himself to give an opinion as to defendant's sanity. Counsel for the prosecution, on the contrary, contend that the testimony showed that the witness was not competent to give an opinion; and, further, that the preliminary question of the witness' competency to give an opinion was a matter lying within the sphere of judicial discretion, and, as such, the same cannot be reversed except in cases of abuse, and that the facts show no abuse of discretion. The rule is well established, and applies to civil as well as to criminal cases, that upon an issue of insanity a layman, when called as a witness, may be required to give an opinion. But in such cases there must be laid a foundation upon which the opinion called for is to rest for support. The preliminary examination must develop sufficient facts to show the competency of the witness; i. e., sufficient to show that he is in a position to give an opinion which will possess at least some value as testimony. The foundation facts must furnish a rational ground for the opinion. See *State* v. *Brooks,* 4 Wash. 328, 30 Pac. Rep. 147; *State* v. *Williamson* (Mo. Sup.) 17 S. W. Rep. 172; *O'Connor* v. *Madison* (Mich.) 57 N. W. Rep. 105; *People* v. *Borgetto* (Mich.) 58 N. W. Rep. 328. The rule to be deduced from these cases is that a nonexpert will be allowed to express an affirmative opinion upon an issue of insanity only after he has testified to acts, conversations, or conduct which to some extent indicate insanity. See 2 Bish. New Cr. Proc. § 678. Applying this rule to the facts disclosed upon the preliminary examination of the witness Mears, we find no error in excluding his opinion from the jury. After stating that the de-

fendant, when the witness saw him on the 3d of January, was walking about, and rubbing his hands, the witness said: "I didn't notice anything peculiar or out of the ordinary in his appearance that day, more than I have stated." We cannot discover any facts, as disclosed by this witness, upon which an opinion to the effect that the defendant was then insane could rest for support. But, in any event, this assignment of error cannot be sustained. In this class of cases the question of the competency of the witness to testify is one for the court, and is also a question lying within the sphere of judicial discretion; and the familiar rule that such discretion will not be reversed except in cases of abuse applies in the case of nonexperts as well as experts who are called to express opinions upon an issue of insanity. See *People* v. *Levy* (Cal.) 12 Pac. Rep. 791; *People* v. *Pico,* 62 Cal. 50; *Colee* v. *State,* 75 Ind. 511; *Denning* v. *Butcher* (Iowa) 59 N. W. Rep. 69. And see 1 Greenl. Ev. § 430p.

The fifth error assigned relates also to nonexpert testimony, and is based upon a ruling of the trial court permitting one Robertson, a witness for the state, sworn in rebuttal, to give his opinion upon the question of defendant's sanity on the day of the homicide. Counsel assails this ruling as error, and contends that the evidence was insufficient as a foundation to show the competency of Robertson to express an opinion upon the question. In ruling upon this assignment we shall deem it unnecessary to set out the foundation evidence in extenso, for the reason that we are quite clear, after a perusal of Robertson's testimony, that the ruling of the trial court admitting the same does not indicate any abuse of discretion. This witness was sheriff of Cavalier county on January 3, 1901, and had been treasurer of the county, and had known the defendant for six years. He saw him on the day of the homicide, and observed his manner, expression and conduct; but did not then converse with him, but was present and heard a conversation between defendant and others, had about 1 o'clock the next morning, in which the witness participated. The conversation did not relate to the homicide, but dealt with early frontier experiences and with defendant's experiences while threshing in earlier days. Witness also was present and heard defendant talk with a number of parties on the following day; among others, with a priest, who visited the defendant. Upon this foundation the witness was asked for his opinion upon the question of the defendant's sanity. Against objection, his opinion was expressed as follows: "Well, I would say that Mr. Barry was in trouble—trouble of mind—at the time, and the question of his sanity or insanity never occurred to me at all at that time. But I would say from his acts at that time and his conversation that he appeared to me to be sane." It is our opinion that the data upon which this testimony was permitted to be given was, if not sufficient to justify its admission, at least of a substantial character; and hence the ruling admitting the testimony cannot be condemned as an abuse of judicial discretion. No inflexible rule has been formulated by the courts which will exactly measure the amount

of testimony required to show competency to give opinion evidence. In such cases the conclusion to be reached by a trial court is necessarily within the domain of discretion, and will depend upon the peculiar facts of each case as developed by the testimony.

As has been stated, numerous errors are assigned in the record which are based upon refusals of the trial court to give instructions to the jury as requested in behalf of the defendant. In this opinion we shall not deem it necessary to refer to any of said assignments save one, and this is mentioned only because it involves an important question of practice, and one likely to arise frequently. The facts upon which this assignment rests are as follows: The trial court had concluded the reading of its charge to the jury, and the jury were about to retire for deliberation upon their verdict, whereupon counsel for the defendant, before the jury retired, requested the court to give a certain instruction to the jury which counsel had written, and which was then delivered to the presiding judge by counsel. This request was in the following language: "If you find that the defendant was not conscious of the act which resulted in the death of Andrew Mallem, you must acquit the defendant." This request was refused, and the court indorsed on the request its reasons for such refusal as follows: "Refused. Handed me too late, and substantially covered by the charge." In our opinion, this instruction embodied a proper statement of the law of the case as applicable to defendant's theory of the evidence, and hence the same should have been given in charge to the jury, unless the reasons given by the trial court for not giving the same furnish valid grounds for the refusal to do so. After a careful consideration of the authorities upon the point, we have reached the conclusion that the request for the instruction, though tardily made, should not have been refused upon the ground that it was handed up too late. See *People* v. *Sears,* 18 Cal. 635; *People* v. *Demastors,* 105 Cal. 669, 39 Pac. Rep. 35; *Chapman* v. *McCormick,* 86 N. Y. 479; *Pfeffelo* v. *Railroad Co.,* 34 Hun. 497; *Leydecker* v. *Brintnall,* 158 Mass. 292, 33 N. E. Rep. 399; *Brick* v. *Bosworth,* 162 Mass. 334, 39 N. E. Rep. 36; *Crippen* v. *Hope,* 38 Mich. 344; *Carey* v. *Railway Co.,* 61 Wis. 71, 20 N. W. Rep. 648; *Allen* v. *Perry,* 56 Wis. 178, 14 N. W. Rep. 3. In a majority of the cases cited requests for instructions had been presented too late under rules of court, and in refusing the requests the trial court in some of the cases placed their refusal upon that ground. In this case the record discloses no rule of the district court, and we know of none, forbidding counsel to ask requests after the charge has been delivered to the jury, and before the jury retires; but, in the absence of any written rule regulating the practice, it is quite clear, in the nature of the case, that counsel are under an obligation to the court to frame and present their requests for instructions at some period prior to the delivery of the charge to the jury. To spring a request at the conclusion of the charge is often a source of embarrassment to the court, and, if this should be done by counsel purposely, and with a view to any such result, the act would be one

involving a gross discourtesy to the court, for which counsel would be justly censurable. Nevertheless, under the rule established by the adjudications above cited, it may be prejudicial error to refuse to give an instruction asked for by counsel, even when the request comes too late under a rule of court. It may happen in exceptional cases that a charge, as given to the jury, is erroneous for the reason that the law applicable to a feature of the case has been wholly omitted from the charge, or it may be erroneous by reason of a misconception or mistaken view of the law as applicable to the case. In either of the instances supposed the parties to the litigation would be deprived of a · highly important legal right, viz., the right to have the law of the case stated from the bench for the guidance of the jury. The duty of declaring the law of the case devolves upon the presiding judge, and this duty should be discharged before the jury retires for deliberation. Nor should any mere rule of court, adopted only to facilitate the administration of the law, be allowed to stand in the way of the performance of this very important duty. Our views could be emphasized by quotations from the cases above cited, but we will content ourselves upon this point by saying that the cases cited fully sustain our views upon this feature of the case. Whether the second ground of the refusal of the trial court to give the instruction asked is valid or not could be determined only by a careful examination of the whole charge as given. We deem it unnecessary in the present case to enter upon this examination, inasmuch as the court has reached the conclusion that a new trial of the action must be directed upon another ground, viz., upon certain instructions actually given to the jury.

In the course of its charge the trial court read from the statute relating to homicide, and explained to the jury that, in order to convict the accused, it would be necessary for the state to show beyond a reasonable doubt that the homicide was committed with malice aforethought. The jury were further instructed generally upon the matter of a reasonable doubt and as to the presumption of innocence; and the provisions of the statute enumerating the classes of persons incapable of committing crime in this state were read to the jury, and, in this connection, in commenting upon the statute which refers particularly to lunatics and insane persons, the jury was informed—and very properly—that persons of unsound mind, including those partially or temporarily deprived of reason, are, in this state, not incapable of committing crime, but, on the contrary, such persons are legally responsible for criminal conduct where the proof shows that at the time of committing the act they knew that the act was wrongful. After these and similar instructions of a general nature were given to the jury, the trial court, coming to the particular facts of this case, proceeded to instruct the jury as follows: "With regard to the evidence in this case there is very little comment required from the court except upon one question; the others being hardly matters of dispute. That the defendant struck Andrew Mallem with a knife is abundant-

ly proved, if you believe the testimony of the state in this case. That the wound caused his death has been testified to by the surgeons most competent to speak, and they are uncontradicted. That the homicide was committed with malice aforethought or premeditation, if the defendant was capable of criminal intent, the malice and premeditated design can hardly be gainsaid, if you will bear in mind what I have already stated, and if you believe the testimony of the state in this case; and in fact there is no denial made by the defendant of ever having committed the act. Evidence has been submitted to you in this case by a number of witnesses showing that the defendant has admitted forming an idea to kill the deceased, and also that he did strike him on the neck with a knife, which wound was the cause of deceased's death; and the court instructs you as a matter of law that the admissions of the defendant are legal and competent evidence against him. Therefore all these facts and admissions, if believed by you, come up to the full measure of proof required to establish what the law denominates 'premeditated design' and 'malice aforethought,' if the defendant was capable of forming an intent. And thus I apprehend that you will have little difficulty in reaching a conclusion as to all the elements that make up the crime charged in the information, unless it be one of 'sound memory and discretion,' as it is called, which is only another expression for a 'sound mind.' We now approach the serious and difficult question in the case." The court further instructed as follows: "I charge you as a matter of law at the outset that if you believe the evidence of the prosecution as to the killing, that the defendant is guilty of murder as charged in the inforamtion or he is innocent of any crime." These instructions are assigned as error, and in support of the assignment counsel for the appellant uses this language in his brief: "The court at the very outset of the charge, expresses its opinion in the most positive language upon the weight and effect of the evidence. This is not within the province of the court. Our statute expressly provides that the court shall instruct only upon the law." This criticism of counsel upon the language quoted embraces two distinct features. Counsel first asserts that the trial court, in the language quoted from the charge, did "express its opinion in the most positive language upon the weight and effect of the evidence." Upon this question—one of fact—there is no doubt whatever existing in the mind of any member of this court. It is impossible, in our judgment, to fairly draw any other conclusion from the language used by the trial court. It is manifest, from the language itself, that the trial court not only expressed an opinion upon the weight of the evidence offered in behalf of the state in support of the charge as contained in the information, but, further, that the court intended to give the jury the full weight of its opinion to guide them in their deliberations upon the essential features of the offense as stated in the information. The language of the court, we think, imports that the trial court was of the opinion that the defense of insanity which the defendant had interposed presented the only practi-

cal issue in the case; and that the facts charged in the information and constituting the essential elements of the offense were so completely established by uncontradicted testimony that they were "hardly matters of dispute." In this connection the fact was pointed out to the jury that the defendant, while on the stand as a witness, made no denial of the charge against him, and it is true that he did not; but it is equally true, and quite as important, in our opinion, that defendant did not, while on the stand, admit the killing of Andrew Mallem, but testified that he had no recollection of having done so, and no recollection of any of his acts or statements on the day of the homicide after the hour of about 9 o'clock a. m., except in a dream-like way. But, secondly, on this point counsel claims that under the law of this state the trial court is inhibited from expressing an opinion while instructing the jury upon the "weight or effect" of the testimony. Counsel says: "This is not within the province of the court. Our statute expressly provides that the court shall instruct only upon the law; * * * and it is highly improper, and reversible error, for a trial judge to express any opinion upon the weight or effect of any evidence in the case." This contention of appellant's counsel presents for determination a point which we regard as decisive of this case. The court having given clear and frequent expressions of its opinion upon the weight and effect of the evidence offered by the state in support of the charge, as embodied in the information, the question is presented whether, in doing so, the trial court disregarded the law in force when the trial took place, and, if it did so, then whether the error necessarily involved in doing so was prejudicial to any of the substantial rights of the defendant. In our opinion, this question must be answered in the affirmative. Whether, in a criminal case, a trial court, in charging the jury, may lawfully give expression to the views and opinions of the presiding judge upon the weight or the effect of the testimony in the case is a very old question in the courts, and one which has evoked a marked conflict of judicial opinion. Even at this late date in the history of the criminal law no rule upon the question has as yet received universal acceptance. At the common law and in the federal courts the right of the court to aid the jury by advising it of the views of the presiding judge as to the weight and effect of the testimony is firmly established. On the other hand, a majority of the states have, either by constitutional or statutory inhibitions, forbidden any expression by the trial judge, while instructing a jury, upon the weight or effect of the testimony in the case. The precise question involved was presented, and the rule settled, in this state soon after the state was admitted, in the first criminal case which reached this court. See *Territory* v. *O'Hare.* 1 N. D. 30, 44 N. W. Rep. 1003. In the case cited the court was required, in deciding the case, to place a construction upon section 343 of the Code of Criminal Procedure (Comp. Laws, § 7370, subd. 6). This statute declared: "The judge must then charge the jury; he may state the testimony and must declare the law, but must not

charge the jury in respect to matters of fact." In the headnote of the O'Hare Case this court said that this statute "has, as to criminal trials, abrogated the common-law rule under which judges were permitted to give juries their own views and opinions upon the weight of the evidence and credibility of the witnesses." But the learned counsel for the state, in his brief, after calling attention to the common-law rule, and stating that it prevailed in the federal courts, and after citing numerous cases in which the common-law rule has been applied in giving instructions to juries, proceeds to say: "Our statute permits the court to sum up the evidence, and was passed in the light of the foregoing cases, the rule of which it establishes for this state"; and in support of this proposition counsel cites section 8217, Rev. Codes 1899. In passing upon the question presented in this proposition of counsel, it becomes necessary to inquire whether the rule laid down in the O'Hare Case has, by subsequent legislation, been swept away, and the common-law rule established. Counsel for respondent contends that this question must receive an affirmative answer, but, after a careful examination of the statutes in force when this case was tried, we are compelled to dissent from this view, and to rule that the law of this state, as laid down in the case cited, has never been abrogated or materially modified by the legislature.

From our standpoint, the question presented is not difficult of solution. The point turns upon the construction to be placed upon the language of two sections of the Code of Criminal Procedure,—sections 8176 and 8217, Rev. Codes 1899. The important language of section 8176 is as follows: "In charging the jury, the court shall only instruct as to the law of the case." Section 8217 declares: "In charging the jury the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it states the testimony in the case, it must, in addition, inform the jury that they are the exclusive judges of all questions of fact." After repeated perusals of the language we have quoted from the existing statute, and after a careful comparison of the same with the language embraced in section 7370, Comp. Laws, we have no hesitation in saying that the rule of the common law permitting judges to instruct juries as to the credibility of witnesses and the weight of the evidence has never been established by the legislature of this state. It is certain that the existing statute, which was in force when this case was tried, does not declare in terms that the presiding judge may give his opinion to the jury upon the weight of the evidence or the credibility of witnesses, and we are wholly unable to draw any such inference from the statute, when the same is properly construed and considered as a whole. We concede that the terms of section 8217 imply that the court, in charging the jury, will be called upon to state "the testimony in the case." In fact, the court cannot, as a rule, discharge its duty by declaring the law of the case without stating, or in some way referring to, the testimony. But the language of section 8217, Rev. Codes, so far as we have quoted the same, is a literal copy

of section 7405 of the Compiled Laws, and hence the same language
was before this court when the case of *Territory* v. *O'Hare* was de-
cided. In contemplation of law, there exists a marked and well-rec-
ognized distinction between stating the testimony to the jury on the
one hand, and, on the other, announcing to the jury the views of the
presiding judge upon the vital matter of the weight and effect of the
testimony. The former becomes necessary in hypothetically applying
the law to the testimony, but the jury is the proper tribunal to deter-
mine the weight or effect of testimony. But section 8176 declares in
terms that "in charging the jury the court shall only instruct as to the
law of the case." We construe this language as being inhibitory upon
trial courts. Its manifest purpose, in our opinion, is to forbid the
trial courts of the state from charging juries in criminal cases upon
the weight or effect of the testimony, or upon the credibility of wit-
nesses. So construed, the statute, as it stands, is even more emphatic
upon the point in question than it was before the enactment of the
amendatory statutes regulating the matter of giving instructions to
juries; and it is in harmony with this interpretation of the amenda-
tory enactments to add that the same, in our judgment, indicate a leg-
islative intent to perpetuate and more clearly state the rule as it was
expressed in the Compiled Laws; nor can we at all indorse the views
of counsel to the effect that the law, as it stands, operates to establish
the rule of the common law in this state. We think that no language
will be found in existing legislation to warrant any such construction
of the statute, or view of the law.

In charging the jury, the trial court distinctly stated that the jury
were the exclusive judges of the credibility of the witnesses, the
weight of the evidence, and of the facts of the case; and further
stated that the court did not desire to express an opinion upon the
weight of the evidence or upon the facts of the case. This feature
of the charge, however, was not repeated in immediate connection
with that portion of the charge which is under consideration here.
But if this feature had been stated in close connection with the lan-
guage we have quoted from the charge, the same could not, in our
judgment, operate to cure the error involved in giving the jury the
clear and emphatic expressions of opinion from the bench as con-
tained in the language which we have quoted from the charge. The
question whether an error of this grave character can be cured by tell-
ing the jury that they are the exclusive judges of the facts and the
weight of the evidence was presented in the case of *Territory* v.
*O'Hare,* and what is said in that case is equally applicable to the
charge under consideration. As supporting our views, see, also, sec-
tion 49, Blashf. Instruct. Juries. In the states where the court is per-
mitted to express its opinion to the jury on the weight of the testi-
mony, the judges are free to do so, and such expressions are not
error where the jury are told by the court that they are the exclusive
judges of the weight of the testimony and of the facts. But where
the common-law rule is abolished a different rule necessarily obtains.

and one which is at least intended to prohibit an expression from the bench on the weight or effect of the testimony. Our views upon this feature of the case have ample authority in their support. See *Kearney* v. *People* (Cal.) 17 Pac. Rep. 782; *People* v. *Webster,* 59 Hun, 398, 13 N. Y. Supp. 414; *Snyder* v. *State,* 59 Ind. 105; *Pena* v. *State* (Tex. Cr. App.) 63 S. W. Rep. 311; *State* v. *Lightfoot* (Iowa) 78 N. W. Rep. 41; *Rice* v. *State,* 3 Tex. App. 451; *McKenna* v. *People,* 18 Hun, 580; *State* v. *Carter* (Iowa) 83 N. W. Rep. 715; *Santee* v. *State* (Tex. Cr. App.) 37 S. W. Rep. 436; *People v. Gordon,* 88 Cal. 422, 26 Pac. Rep. 502; *State* v. *Addy,* 28 S. C. 4, op. 13, 4 S. E. Rep. 814; *Forrester* v. *Moore,* 77 Mo. 651. op. 660; *State* v. *Williams,* 31 S. C. 238, op. 258, 9 S. E. Rep. 853; *Hayden* v. *Parsons,* 70 Mo. App. 493; *People* v. *Casey,* 65 Cal. 260, 3 Pac. Rep. 874; *People* v. *Williams,* 17 Cal. 142, op. 147; *State* v. *Benner,* 64 Me. 267; *Ross* v. *State,* 29 Tex. 500; *Com.* v. *Barry,* 91 Mass. 276; *Moore* v. *State,* 85 Ind. 90; *People* v. *Webster* (Cal.) 43 Pac. Rep. 1114. See section 46, Blashf. Instruct. Juries, where the authorities under similar statutes are collated by states. Also, 11 Enc. Pl. & Prac. 97.

The reason underlying the rule we are considering is well expressed in *People* v *Williams,* 17 Cal. 142. In its opinion in that case the court said: "The court should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression. The experience of every lawyer shows the readiness with which a jury frequently catch at intimations of the court, and the great deference which they pay to the opinions and suggestions of the presiding judge, especially in a closely balanced case, when they can thus shift the responsibility of a decision of the issue from themselves to the court. A word, a look, or a tone may sometimes, in such cases, be of great, or even controlling, influence. A judge cannot be too cautious in a criminal trial in avoiding all interference with the conclusions of the jury upon the facts; for of this matter, under our system, they are the exclusive judges." In *People* v. *Casey,* 65 Cal. 260, 3 Pac. Rep. 874, the trial court stated to the jury what certain testimony "showed." Commenting upon this, the supreme court used language which is in point under the statute of this state. The court said: "This is in clear violation of that clause of the constitution, which declares that 'judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law.' To state the testimony is one thing. To declare what it shows is another, and very different, thing. It is for the jury exclusively to determine what the testimony shows." Similar language was employed in *People* v. *Gordon,* 88 Cal. 422, 26 Pac. Rep. 502. In a recent California case—*People* v. *Webster,* 43 Pac. Rep. 1114—the charge was assault with intent to commit a rape, and the prosecutrix testified that she was under the age of consent, and no evidence was introduced contradicting the witness. Upon this testimony the trial court instructed the jury, in effect, that the prosecutrix was under

the age of consent. This was held error, and in commenting on the charge the following language was used: "The court had no more right to tell the jury that, under the evidence, the girl was under 14 years of age, than it had to tell the jury that, under the evidence, the offense charged had been proven. The court appears to have assumed that, the prosecutrix having testified that she was but 12 years of age, and no contradictory evidence having been offered, the fact was conclusively established as a matter of law, and therefore it was justified in so telling the jury. But such principle is wholly unsound." In *Com.* v. *Barry,* 91 Mass. 276, the court had occasion to consider a statute, which is, in its meaning, substantially like that in this state. The statute of Massachusetts reads: "The courts shall not charge the juries with respect to matters of fact, but may state the testimony, and the law." Construing this statute, the court said: "The statute was not designed to deprive the court of all power to deal with the facts proved. On the contrary, the last clause of the section very clearly contemplates that the duty of the court may not be fully discharged by a mere statement of the law. By providing that the court may also state the testimony, the manifest purpose of the legislature was to recognize and affirm the power and authority of the court, to be exercised according to its discretion, to sum up the evidence, to state its legal effect and bearing on the issues, and to indicate its proper application under the rules of law. In the case at bar the court exceeded the limit prescribed by the statute. If the language used by the court was intended to be applicable to the witnesses who had testified in behalf of the prosecution, it was an expression of opinion as to their credibility. As this was a matter of fact, within the exclusive province of the jury to determine, such expression of opinion went beyond a 'statement of the testimony,' and trenched on prohibited ground, being a charge to the jury 'with respect to matters of fact.' " In *Rice* v. *State,* 3 Tex. App. 451, a new trial was granted in a murder case for error involved in charging the jury upon the weight of the evidence. In its opinion the court said: "A charge is perfectly unexceptionable only when it sets forth the law applicable to the case, without expressing or intimating any opinion as to the weight of the evidence, or the credibility of statements made by the party accused or by the witnesses. *Ross* v. *State,* 29 Tex. 499; *Jones* v. *State,* 13 Tex. 175, 62 Am. Dec. 550; *Butler* v. *State,* 3 Tex. App. 48." In *Snyder* v. *State,* 59 Ind. 105, the court say in the head-note: "An instruction to the jury, on the trial of a criminal action, which is calculated, by its terms, to leave the impression upon the minds of the jury that the state has made out her case, and that, unless the evidence of the defendant raises in their minds a reasonable doubt, they should convict, is erroneous." See, also, *Moore* v. *State,* 85 Ind. 90. In *Pena* v. *State* (Tex. Cr. App.) 63 S. W. Rep. 311, the case was reversed for instructions upon the weight of the evidence. In *State* v. *Addy,* 28 S. C. 4, 4 S. E. Rep. 814, the court had occasion to construe a provision of the state constitution which reads:

"Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." In reversing the case the court said: "So far as a rule upon the subject can be absolutely fixed, we think it well established in this state 'that the judge must carefully avoid expressing an opinion on the facts, leaving it to the jury to draw their own conclusions entirely unbiased by any impression which the testimony may make upon the mind of the judge. * * * He must not in any way indicate his opinion of the facts to the jury.'" The meaning of the same section of the constitution was again stated in *State* v. *Williams,* 31 S. C. 238, 9 S. E. Rep. 853, as follows: "This court has in several cases announced its understanding of the meaning and intent of this section, which, in brief, is as follows, to wit: While the judges may state the testimony, they cannot legally indicate their opinion, either expressly or impliedly, intentionally or otherwise, as to the credibility of the witnesses, or as to the truth of any fact in issue and the subject of the evidence. They may declare the law fully and freely; but whether a certain contested fact has been proved is entirely for the jury, which involves both the credibility of the witness and the existence of the fact, whether said fact depends upon direct and positive testimony or upon inferences to be drawn from other proved facts. In fine, the whole matter of finding the facts of the case must be left entirely to the jury, without suggestions or leadings by the court." Similar expressions of judicial opinion will be found in the cases cited, but upon this feature we shall add only certain extracts from Iowa cases which are strictly in point, because in them the trial court was dealing with cases where the evidence on the part of the state was ample, and not contradicted. In *State* v. *Carter,* 83 N. W. Rep. 715, the defendant was charged with obtaining a signature to a check by false representations, and in charging the jury the trial court used this language: "The proof shows beyond all controversy that the said J. L. Miller signed said check at the time named in the indictment." The supreme court held this to be erroneous, and said: "As defendant introduced no evidence, the court might as well have said that, as there was no contradiction in the evidence, all the elements of the crime were established. This, of course, it could not do. What it did do was no less objectionable." The case of *State* v. *Lightfoot,* 78 N. W. Rep. 41, is an instructive case. In its opinion this language is used: "The plea of not guilty puts in issue every material element of the offense charged, and, if the court may find one fact established, it may find all. We do not think the court has power to instruct that any essential fact is established, notwithstanding there may be no evidence to the contrary. The jury have the right to disbelieve any of the witnesses whose evidence they see fit to reject, and the court is powerless in criminal cases. *Com.* v. *Knapp,* 10 Pick. 477, 20 Am. Dec. 534. They have power to return a verdict of acquittal in a criminal case, although the evidence clearly shows the commission of the crime, and is uncontradicted. In this sense a jury in a criminal case is judge of both

the law and the fact, for the court cannot set aside its verdict and grant a new trial. But, aside from this, as the jury must pass upon all questions of fact, they, of necessity, must weigh the evidence, and in doing this they have the right to disbelieve any and all the witnesses."

The court, in charging the jury in the case at bar upon the subject of insanity, used this language: "The defense of insanity has been so abused as to be brought into great discredit. It has been the last resort in cases of unquestionable guilt, and has been an excuse to juries for acquittal, when their own and the public sympathy have been with the accused, especially when the provocation to homicide has excused it according to public sentiment, but not according to law. For that reason it is viewed with suspicion and disfavor whenever public sentiment is hostile to the accused. Nevertheless, if insanity be established to a degree that has already in part and will hereafter be further explained, it is a perfect defense to the information for murder, and must be allowed due and full weight and consideration." In our opinion, this portion of the charge was error. It did not permit the defendant to interpose the defense untrammeled and free from condemnation from the bench. In the language quoted the trial court, while conceding that this defense might lawfully be interposed, placed the same under the ban of judicial disapproval by stating that the defense of insanity had been abused and brought into great discredit, and that it had been the last resort in cases of unquestionable guilt, etc. The defense of insanity is dictated by an enlightened and humane public sentiment, and in the state of North Dakota society is amply protected against the possible abuses of the defense by a somewhat drastic statutory provision under which an insane person may be punished for a criminal act, if, at the time of its commission, the proof shows that he knew the same was wrongful. See section 6814, subd. 4, Rev. Codes 1899. In this case the only defense sought to be supported by testimony was that of insanity, which is a strictly legitimate and legal defense under the statute in any criminal case. In such a state of facts we have no hesitation in holding that it was highly prejudicial to the substantial rights of the accused to handicap his sole defense by an instruction to the jury, which, in effect, disparaged the defense of insanity in its entirety. It may be quite true that this defense has been much abused, and it may be right and proper for courts of last resort and for the text-writers to animadvert upon the defense of insanity. Nevertheless, we think a jury should be left free to consider the defense upon its merits, and from their own point of view, uninfluenced by adverse comment from the bench. Our views have the support of judicial opinion. In *Alvin* v. *State,* 63 Ind. 598, the court said: "Where the judge is forbidden to express his views upon questions of fact or regarding the credibility of witnesses, he is necessarily inhibited from criticising any particular defense or cause of action, unless it be when proved insufficient in law. Therefore instructions respecting the defense of an alibi cannot be

sustained if their natural tendency is to prejudice the jurors against it." Again, in *Aszman* v. *State,* 123 Ind. 347, 24 N. E. Rep. 123, 8 L. R. A. 33, the court said: "The court does not regard with favor any statements by the trial court which are designed to cast discredit or suspicion on any defense which is recognized by the law as legitimate, and which an accused person is seeking in good faith. In this respect we are unable to appreciate any well-grounded distinction between the defense of insanity, self-defense, or alibi." We are aware that there is some conflict of opinion upon the point under consideration, but we think the sounder rule is stated in the cases last cited, and from which we have made quotations. But in what we have said on this feature of the case we do not wish to be understood as disapproving proper cautionary instructions to juries to the effect that the jury should carefully consider and scrutinize the evidence in insanity cases. Such instructions are proper so long as they do not go to the extent of discrediting the defense of insanity as a defense.

It follows, from the views we have expressed upon the charge to the jury, that the judgment entered in the court below should be set aside, and a new trial awarded to the defendant, and this court will so direct. All the judges concurring.